JAMES W. LYMAN *versus* JOHN R. REDMAN & *als.*

To render a person liable as owner of a vessel, it is not necessary to show that he was such by the register, or by bill of sale, or other instrument in writing ; but for that purpose, the ownership may be proved by parol evidence.

The taking of the vessel by the master, his victualing and manning her, paying a portion of the port charges, and having a share of the profits, do not of themselves constitute him the owner *pro hac vice.* It is the entire control and direction of the vessel, which he has the power to assert, and the surrender by the owners of all power over her for the time being, which will exonerate them from their liability for the contracts of the master relating to the usual employment of the vessel in the carriage of goods.

It is not competent for the master of a vessel, by virtue of his power as such, to bind the owners in the purchase of a cargo ; and before they can be holden for the payment therefor, there must be satisfactory proof of prior authority to purchase, or subsequent ratification of his acts.

If the owners of a vessel receive her from the master, with a cargo on board, knowing it to have been purchased on credit for the benefit of the vessel and owners, and send the same to another port under charge of another master for the purpose of making sale of the cargo, and on this voyage a part of the cargo is thrown overboard for the security of the remainder and of the vessel, and the residue is sold at the port of destination, and the proceeds thereof are applied to the repair of the vessel, the owners are liable to those who furnished the cargo for the price thereof.

To determine whether an instruction, given by the Judge to the jury, at a trial, be correct, it should be considered in connexion with the evidence and the other instructions to them on the same subject.

ASSUMPSIT against John R. Redman, Joseph Walker and Benjamin Rea, as the owners of the schooner Clio of Brooksville, to recover the value of 192 tons of plaster, purchased

by the master of the plaintiff at Lubec, and taken on board the Clio, and as the master, Otis Roberts, who was a witness, on being released, stated, " on the security or credit of vessel and owners, as is usual in such transactions." Roberts went with the vessel and cargo to Brooksville, where he was dismissed by the owners as master, and Darby, the mate, made master. The Clio proceeded with the cargo to Philadelphia in October, 1839, and the plaster was there sold, " about fifteen casks having been thrown overboard on the voyage in consequence of having got ashore on the way out," by Darby, the master. Darby states in his deposition, " that the proceeds of the plaster I laid out on the vessel at Philadelphia after landing the plaster, and on my return I was wrecked on Cape Cod." Witness testified, that the Clio was purchased of Carleton, the former owner, by the defendants, and that they actually controlled and managed the vessel. The bill of sale was made by Carleton to Erastus Redman, and on the papers he appeared to be the sole owner. The defendants objected to the admission of such parol evidence of ownership in the defendants, but the objection was overruled by the presiding Judge. There was evidence introduced relative to the question, whether the Clio was, or was not sailed by the masters on shares.

The counsel for the defendants requested the Judge to instruct the jury :

1. That it is not competent for the master of a vessel, in his capacity of master, to bind the owners to pay for a cargo purchased by him on their account, without express authority from the owners.

2. That where a vessel is let to the master on shares, he victualing and manning her, paying a portion of the port charges, and having the control of the vessel for the time being, and yielding to the owners for her hire a certain share of the net earnings, the liability of the general owner ceases, and the master is placed in their stead during the time the vessel thus continues under his control.

3. That if they shall find, that Roberts or Darby, or either,

had the vessel on shares at the time of the purchase of the plaster, victualing and manning her, paying a portion of the port charges, having the control of the vessel for the time being, and yielding to the owners for her hire a certain share of her net earnings, that this action cannot be maintained.

4. That if they shall find, that Roberts, at the time of the purchase of said plaster, had no authority to make such purchase, other than that incident to his office and capacity as master of the vessel, that the general owners would not be liable to pay therefor, notwithstanding it should not be proved that Roberts or Darby had the vessel on shares.

5. That before the plaintiff can recover, it is incumbent on him to prove that the defendants were the owners of said schooner Clio at the time of the purchase by Roberts of the cargo, and that the ownership of a vessel must be proved by other evidence than acts of ownership.

6. That if they shall find that Darby, without authority from the defendants or the plaintiff, carried the cargo to Philadelphia and sold it there, and without the knowledge and consent of the plaintiff or defendants, applied the proceeds to the repairs of the vessel for injuries she had received on her outward voyage, and while Darby had her on shares, that the defendants would not be liable to the plaintiff on the ground, that the money had been expended for their benefit; and that they would not, under the circumstances, be liable in this action on any of the money counts.

TENNEY J. presiding at the trial, instructed the jury, that if the contract for the plaster was between the plaintiff and the master of the vessel, or any other than the defendants, or if the master of the vessel alone or with another had the possession and entire control and direction of her, so that the defendants, for the time being, had no right to interfere with her management, the plaintiff could not recover in this action. But if the defendants were jointly the acting owners of the vessel, professing to control her, although they might not in fact be the real owners, and the master alone, or with another, had not the entire control and management of her to the ex-

clusion of the former, and the plaster was purchased in pursuance of the directions of the defendants, express or implied ; or if the same was not purchased by the master on his own account, or on account of himself and some other person, but by him acting for the vessel and owners, and the defendants took possession of the vessel and the plaster, being informed in what manner and of whom the latter was obtained, the jury would inquire, whether the defendants had not adopted and ratified the purchase, and if so, the plaintiff would be entitled to a verdict; or if the purchase was not made by the master on his own credit, or on that and of another, but by the master acting as aforesaid, and the plaster went for the benefit of the defendants or of the vessel, or was thrown overboard in part, to prevent the destruction of the vessel, or the remainder of the cargo, after Roberts left her, he not being liable for repairs subsequently made, even if he had taken her on shares, the action would be maintained ; and in addition to the price of the plaster, the jury would add interest from the time when payment was to have been made, if they should find for the plaintiff. And the instructions requested were withheld, unless so far as they were embraced in the instructions given.

The verdict was for the plaintiff, and the defendants filed exceptions, and also a motion for a new trial, because the verdict was against law and evidence.

*J. A. Lowell,* for the defendants, contended that the first instruction requested, should have been given. The *master's* power relates merely to the carriage of goods, and to supplies and repairs requisite for the ship ; and he can bind the owners of the vessel in contracts relative to her usual employment only. He has no power to purchase a cargo on account of the owners without express authority from them. 17 Maine R. 147 ; 14 Maine R. 183 ; 8 Greenl. 356.

The second request should have been granted. Such is believed to be the well settled law. 15 Mass. R. 352 ; 16 Mass. R. 336 ; 4 Greenl. 264 ; Abbott on Ship. 23 in notes ; 3 Kent, 133 to 138.

The third should have been given. The master can in no case bind the owners for the cargo without express orders, as has before been said ; and the master could bind none but himself, because he had become owner for the voyage, and therefore the responsibility of the general owners had ceased. Abbott, 23, 91 ; 16 Maine R. 413 ; 17 Mass. R. 581.

The fourth should have been given. 3 Kent, 163 ; Law Summary, 273 ; 17 Maine R. 147 ; 10 Mass. R. 26 ; 6 Pick. 131 ; 4 Pick. 145.

The fifth request should have been granted. Possession and acts of ownership do not establish a title to a vessel. If it were so, Roberts and Darby were the owners, for they had the one, and exercised the other. The title to a vessel must be proved by writing. 3 Kent, 130 ; Abbott, 1, 13 ; 15 Mass. R. 352.

The sixth was improperly withheld. The hirer of a chattel cannot, without special authority for the purpose, create a liability in the owner for costs of repairs or supplies furnished by direction of the hirer, and to aid him in deriving advantage from the thing hired. 20 Maine R. 213 ; 3 Kent, 136 ; Abbott, 22, 100 ; 5 Pick. 422 ; 16 Maine R. 413 ; 18 Maine R. 132.

He contended also, that the instructions given did not substantially comply with the requests made, and were, in themselves, in many respects erroneous or irrelevant.

*J. C. Talbot, Jr.* said that the first request was in substance complied with. The evidence to prove the authority, may be positive or presumptive, by direct instructions, general usage, or subsequent ratification. 8 Greenl. 356 ; 17 Maine R. 147 ; Abbott on Ship. 98, note 3 ; 11 Mass. R. 99.

As to the second : the Judge substantially instructed the jury, that in order to constitute the master the owner, *pro hac vice,* so that the liability of the general owners would cease, he should have the possession and entire control and direction of the vessel, and that the general owner should have no right to interfere. This is in strict accordance with the law.    4

Greenl. 407; 15 Mass. R. 370; 16 Mass. R. 336; 7 Greenl. 261; 4 Greenl. 264; Abbott, 22, note 1.

The third is the same as the second.

The fourth request was given in substance. The qualification, unless the owners had adopted or ratified his acts, was right. 8 Greenl. 356.

As to the fifth. The evidence introduced to prove the ownership was legally admissible, and was legally submitted to the jury. 8 Pick. 86; 16 Pick. 401; 16 Mass. R. 336; 6 Greenl. 474; 20 Maine R. 213; 3 Wash. C. C. R. 209; Abbott, 60, note 1; 5 Mass. R. 42; 10 Mass. R. 192; 12 Mass. R. 54; 1 Mason, 306; Phill. on Ins. 95; 7 Johns. R. 308; 2 Hall, 1. The persons from whom the master derives his authority, and whose agent he is, are liable as owners, although they may not have the absolute legal title. Abbott, 100; 15 Mass. R. 370. One not registered as owner, but holding himself out as such, is liable. 2 Stark. Ev. 942, and cases there cited; Abbott, 19; 2 Bingh. 179; Greenl. Ev. § 494, and note; 3 Kent, 149.

In relation to the sixth. Under the instructions, the jury must have found, that the defendants knowingly took possession of the vessel and cargo, by their agent Darby. They then had the benefit of the cargo, and were liable for the proceeds thereof.

The opinion of the Court was drawn up by

TENNEY J. — To charge the defendants in this action, it is not necessary to show, that they were the registered owners or the actual owners of the schooner Clio. A bill of sale, or other instrument in writing, is not essential to the transfer of a ship more than for any other chattel; but ownership may be proved by parol. Actual possession by the party in whom the interest is alleged to be, and acts of ownership by him, are in cases of vessels, as with other personal property, presumptive evidence of title. The papers at the custom house showed Erastus Redman to be the sole owner, but there was evidence submitted to the jury, tending to show that the defendants not

only had the possession of the schooner, employed the master, consulted together about her management, and settled with him, but that they purchased her in the first part of the season of 1839.

The fact has been settled, that the master had not the control of the vessel, so that he could legally prevent the interference of the defendants in her management. This results from the instructions of the Judge and the verdict. The cases are numerous, which show, that the taking the vessel by the master, victualing and manning her, and paying a portion of the port charges, and having a share of the profits, do not of themselves constitute him the owner *pro hac vice.* It is the entire control and direction of the vessel, which he has a right to assert, and the surrender by the owners of all power over her for the time being, which will exonerate them from the liability of the contracts of the master, relating to the usual employment of the vessel in the carriage of goods. The expense of victualing and manning the vessel and receiving compensation for his services and disbursements in a share of the profits by the master, are by no means inconsistent with the right of the employer or owner, to have the general direction of the business in which she is engaged.

The verdict has also established the fact, that the master did not purchase the plaster on his own account, but on account of the vessel and the acting owners. It was not competent for him by virtue of his character as master to bind the defendants in the purchase of a cargo; and before they could be holden therefor, there must be satisfactory proof of previous authority so to purchase, or subsequent ratification of his acts. It would be by one or the other alone, which would make them chargeable. But the evidence to show either, as in any other contract, may be express or implied, circumstantial, as well as positive and direct. The intention of the parties is to be ascertained, and when known, to prevail. Before the jury were authorized, under the instructions, to find a verdict for the plaintiff, they were to be satisfied, that the master had power previously given, to purchase for the defendants, or that

they had afterwards adopted and ratified the contract, which he made in their behalf.

The last instruction was substantially, that if the purchase was made by the master, not on his own account, but by him acting for the defendants, and the plaster went for their benefit, or that of the vessel, or was thrown overboard in part, to prevent the destruction of the vessel, and the remainder of the cargo, after Roberts left her, the action could be maintained. This instruction must be looked at, like all others, in connection with the evidence and the other instructions upon the same subject, and will be qualified thereby. The fact having been established, that the master made the purchase on account of the defendants, and it being a result of the verdict and the instructions, that Roberts left the vessel before any part of the cargo was thrown overboard or sold, it follows, that some one must have been in charge of the vessel after he left, and when the cargo was thus disposed of. The evidence is all reported, and is full, clear, uncontradicted and unimpeached, that one of the defendants who acted for the owners had entrusted the vessel and cargo to Darby. There is no evidence that Roberts after this, claimed, or that the defendants admitted him to have had any interest whatever in the plaster. No suggestion is made, that he gave any directions concerning its destination, that it was carried as his freight or that he was advised of the result of the voyage. The one in charge of the vessel testifies that he took her upon shares, and farther we are not informed of the terms of the contract between him and the owners. There was no evidence on which the jury could have returned a verdict, that Roberts was the owner of the plaster after he left the vessel, or that Darby was the owner *pro hac vice.* The defendants having been found to be the acting owners, they are to be considered as having the control, until evidence of the contrary was in the case, and we have seen that taking the vessel on shares does not have this effect. Darby then became the agent of the defendants, and in the default of proof to the contrary, is presumed to have observed their directions in all things, connected with

the charge, and to have conducted with fidelity; and whatever were his acts in the premises, were their acts, and so to be treated. They received the cargo into their possession; the proceeds of the part sold, after throwing overboard a portion for the security of the remainder and the vessel, they have received, and it has been appropriated to make repairs upon the vessel, and they have offered to account to no one. The language of the defendants, when they requested the master to go to Lubec, previous to the last voyage, the manner in which they treated similar purchasers previously, the reception of the cargo, when there is evidence that they had knowledge that it was purchased on their account, were facts for the jury to consider, on which they have passed in the inquiry whether the acts of Roberts in their name were authorized or ratified.

The instructions requested by the defendant's counsel which were not substantially given, were properly withheld, the principles contended for in the latter, not being warranted by law, or not coming in question by any evidence in the case.

The verdict was well rendered upon the facts in the trial and the

*Exceptions and motion are overruled.*