### PETERS v. ROHRMAN et al.

#### (District Court, D. New Jersey. March 12, 1921.)

1. **Shipping ☜57—Master operating on shares not necessarily owner pro hac vice.**

   A master operating a vessel on shares is not ipso facto an owner pro hac vice, and an express agreement by which possession and control of the vessel is surrendered to him, or circumstances from which such agreement can be inferred, must be shown.

2. **Shipping ☜57—Master held "owner pro hac vice," and owners not liable for his breaches of contract.**

   Where the master of a vessel had sole control of the management and navigation, employed the officers and crew, made all charters, determined the voyages to be made, collected the earnings, and, after taking out charges, etc., divided the remainder into two parts, paying the wages, provisions, and expenses of the crew from his part, and dividing the other part among the owners, after deducting cost of repairs and renewals, he was the owner pro hac vice, and part owners were not liable for breach of a charter made by him.

3. **Shipping ☜62—Minority owners not liable for breach of charter, where they protested, and master bought their interests.**

   Where owners of minority interests in a vessel, on learning of the making of a charter party at a time when there was submarine peril, protested, and the master thereupon purchased their interests in the vessel, they were not liable for the breach of the charter, even though the master was a managing owner, and not an owner pro hac vice; this amounting to a sufficient dissent, accompanied by a surrender of their right to share in the profits.

In Admiralty. Libel by David West Peters, suing on his own behalf and on behalf of himself and another, formerly partners trading as Peters & Co., now in liquidation, against Joseph B. Rohrman and another. Libel dismissed.

Harrington, Bigham & Englar, of New York City, and McDermott & Enright, of Jersey City, N. J. (T. Catesby Jones, of New York City, and James D. Carpenter, of Jersey City, N. J., of counsel), for libelant.

Howard M. Long, of Philadelphia, Pa., for respondents.

LYNCH, District Judge. On May 2, 1917, the schooner Henry Lippitt was chartered by Capt. Adrian E. Hooper, the master thereof, to carry for the libelant a cargo of oil from New York to France.

---

The vessel's failure to make the voyage obliged the libelant to secure another schooner to transport his cargo, which necessitated the payment of a higher freight charge than that called for by the charter party of the Henry Lippitt. At the time of the making of the charter party, and for a long time prior thereto, the respondents were the owners of shares in the Henry Lippitt—Rohrman possessing an [11]/[64] interest and the Mathis Company a [1]/[64] interest.

The question for determination is whether these respondents, holding such shares, are personally responsible for any damages sustained by the libelant because of the failure of the vessel to fulfill its engagement. It is asserted on behalf of the respondents that Capt. Hooper, in entering into the charter party, did not act as the agent of the part owners, but as an owner pro hac vice, and that therefore the respondents are not liable.

[1] A master operating a vessel on shares is not ipso facto an owner pro hac vice, but, as is conceded by the counsel for the libelant, an express agreement must be shown, or circumstances from which such agreement can be inferred, by which the possession and control of the vessel was surrendered to the master.

In Webb v. Pierce, Fed. Cas. No. 17,320, it was held that the master was an owner pro hac vice, because an express contract was shown by which the master was given power to go where he chose and to use the vessel in such ways as he deemed fit.

In Thorp v. Hammond, 12 Wall. 408, 20 L. Ed. 419, one of the owners of a vessel was sailing her on shares, and it was attempted to hold the other owners liable for the damages received by another vessel in collision. At page 415, 416, of 12 Wall. (20 L. Ed. 419), the court said:

"It remains to inquire whether the respondents, or any of them, are personally responsible for the injury. They were all general owners of the schooner at fault at the time when the collision occurred, but the evidence shows that she was commanded, sailed, and exclusively managed by S. S. Hammond, one of them, under an arrangement made between him and the other owners, whereby he had in effect become the charterer of the vessel, to be employed on his own account, without the management, control, restraint, or possession of the other owners. He sailed the vessel on shares, hiring his own crew, paying and victualing them, paying half the port charges, retaining half the net freight after the port charges were taken out, and paying to the general owners the other half. It is clear, therefore, that he must be considered as having been the owner 'pro hac vice.' This accords with the authorities generally."

In Webster v. Disharoon (D. C.) 64 Fed. 143, there was a libel brought in personam by an owner of another vessel to recover the value of its vessel, which had become a total loss during a storm, when the schooner Margie J. Franklin dragged her anchor and drifted down on her and injured her, so she had to slip her cable and so went ashore. This case was decided by Judge Morris, of the District of Maryland, who held that the general owner was not liable. At page 144 Judge Morris says:

"It is clear that the master of the Margie J. Franklin must be regarded as her owner pro hac vice. He sailed her on shares, and had sole control of her use and navigation, employed and paid her crew, and provided them food. I know of no case which has disturbed the authority of Thorp v. Hammond,

12 Wall. 416, in which it was held that for damages resulting from a collision the owner pro hac vice is liable, and the general owner is not. The vessel is liable in rem, but the general owner is not not liable in personam."

In the case of Lyman v. Redman, 23 Me. 289, cited by libelant, we find the following:

"The cases are numerous which show that the taking of the vessel by the master, victualing and manning her, and paying a portion of the port charges, and having a share in the profits, do not of themselves constitute him the owner pro hac vice. It is the entire control and direction of the vessel, which he has a right to assert, and the surrender by the owners of all power over her for the time being, which will exonerate them from the liability of the contracts of the master, relating to the usual employment of the vessel in the carriage of goods."

And in the case of Vose v. Cockcroft, 44 N. Y. 415, also cited by the libelant, Judge Earl, at page 429, says:

"In order to exempt the owners from personal liability in such a case [supplies furnished the ship], the master must pro hac vice be the owner, and in the control and management for the time being of the vessel as owner."

[2] In the instant case, there being no express agreement, do the facts warrant the implication of an agreement? Capt. Hooper, an experienced navigator, had sole control of the management and navigation of the ship. He employed the officers and crew, made all her charters, determined the voyages which she should make, collected the earnings of the vessel, both freight and demurrage, and in the distribution of those earnings he first took the gross earnings, and from them deducted what is known as the port charges, pilotage, towage, custom fees, and all expenses incidental to getting the vessel in and out of port, and after making these deductions he divided the remainder into two parts, one of which he took, and from this part paid the wages, provisions and expense of obtaining the crew, while from the other part, or one-half of the remainder, he deducted the cost of repairs and renewals, and divided what was left thereof among the other owners pro rata.

The other owners, including these respondents, did nothing at any time with respect to the making of charters. They were not consulted about them, and knew nothing regarding them at the time they were being made. Neither did they exercise any authority at any time with respect to the possession, manning, or navigation of the vessel. Apparently all they did was to receive their portion of the profits as sent to them by the captain. It is undisputed that this plan of sailing vessels has been pursued for years.

Do not these facts warrant the implication of an agreement that the possession and control of the vessel was to be in the master? I think so. In my opinion Capt. Hooper was not a managing owner or agent, as the libelant contends, but, on the contrary, was an owner pro hac vice. Having reached this conclusion, it is, of course, not necessary to consider the remaining points of the respondents. However, I do not think that it would be unwise to express briefly my views with respect to one other point urged in behalf of the respondents.

[3] Assuming, now, that my conclusion that the captain of the vessel was an owner pro hac vice is erroneous; that, instead of being such owner, he was simply the managing owner or agent of all of the owners—we come to this situation: When the two respondents learned of the making of the charter party, they immediately protested against the vessel going to France. At that time the United States was at war, and there was a submarine peril, with which a vessel crossing the Atlantic would have to contend. So Capt. Hooper, in answer to their protests, agreed to and actually did purchase the respective interests of these two respondents in the vessel. He paid Rohrman $4,917 on June 13, and the Mathis Company $800 on July 2, 1917; both respondents for this valuable consideration transferring their entire interest or share in the vessel to Capt. Hooper.

It is admitted on the part of the libelant that minority owners have a right to dissent. I quote from the brief of the libelant:

"A part owner, who dissents, has the right and privilege of requiring the other part owners to give bond for his security. Some of the authorities hold that a part owner is absolved from liability only by securing such a bond; others, *that an express dissent in itself is sufficient.* The authorities, however, consistently hold that, for such a dissent to be operative, *it must be express and unequivocal,* and, further, that there must also be *a surrender of the right to share in the profits,* since the existence of the one necessarily negatives the other."

But the libelant insists that what these two respondents did in the instant case did not amount to a dissent; that it was not a sufficient dissent, or rather a complete dissent. How could there be a more effective way of dissenting from a proposed trip than by withdrawing completely from all participation in it? A bond could not be given to cover an interest with which they had parted. The sale of their interests certainly was "a surrender of the right to share in the profits." It seems to me they objected and dissented to this trip in the most express and unequivocal way imaginable, viz. by parting with the shares, which theretofore had been profitable to them.

For this reason, also, it is my opinion that these respondents are not liable.

A decree will be entered dismissing the libel.