## Case No. 8,310.

### Ex parte LEWIS.

[2 Gall. 483.] [1]

Circuit Court, D. Massachusetts.   Oct. Term, 1815.

#### WHARVES—LIEN ON FOREIGN VESSEL.

1. A wharfinger has a lien on a foreign ship for wharfage by the law of the admiralty.

[Cited in Johnson v. The M'Donough, Case No. 7,395; Leland v. The Medora, Id. 8,237; United States v. New Bedford Bridge, Id. 15,867; The Kate Tremaine, Id. 7,622; Delaware River Storage Co. v. The Thomas, Id. 3,769; Ex parte Easton, 95 U. S. 76; Hubbard v. Roach, 2 Fed. 394.]

[Cited in City of Jeffersonville v. The John Shallcross, 35 Ind. 23; Brookman v. Hamill, 43 N. Y. 563.]

2. But if the wharfinger has made an express personal contract with the ship owner, the court will not give the wharfinger a priority of claim over a bottomry interest, which previously attached on the ship.

[Cited in Zane v. The President, Case No. 18,201; Wescot v. Bradford, Id. 17,429; The Amstel, Id. 339; The Panama, Id. 10,703; Remnants in Court, Id. 11,697; Harris v. The Kensington, Id. 6,122.]

3. Quaere, if such personal contract be a waiver of the lien?

[Cited in Russel v. The Asa R. Swift, Case No. 12,144.]

This was an application on petition for the payment of the dockage due on the ship Jerusalem, which had been libelled on a bottomry bond, and sold under an interlocutory order of this court, and the proceeds of the sale brought into the registry. The ship was still lying at the plaintiff's wharf when she was arrested upon the admiralty process pending in this court. The Jerusalem [Case No. 7,-293].

[After the sale, a petition for payment out of the proceeds to a tradesman, for repairs, was heard and allowed. Case No. 7,294.]

Mr. Fales, for petitioners.

Mr. Hubbard, for bottomry creditor.

STORY, Circuit Justice. The first question is, whether this charge, being against a foreign ship, constitutes a lien upon the ship itself. No case in point has been cited. In Gardner v. The New Jersey [Case No. 5,233], Mr. Justice Peters stated, that he had allowed wharfage out of remnants and surpluses, as the wharfinger might detain the ship until payment. His opinion is therefore very clearly in favor of the lien. And it seems to me fully supported in principle by the doctrines, as well of the common law (Vaylor v. Mangles, 1 Esp. 109; Spears v. Hartly, 3 Esp. 81; Savill v. Barchard, 4 Esp. 53), as of the civil law (1 Domat. lib. 3, tit. 1. § 5, p. 9), and by the analogous cases of ma-

[1] [Reported by John Gallison, Esq.]

terials furnished and repairs made upon the ship. See Roccus de Nav. notes 92, 93; 2 Brown, Adm. 142, 198; Abb. Shipp. pt. 2, c. 3, § 9. To be sure, the case of Justin v. Ballam (2 Ld. Raym. 805) looks strongly the other way, as to a lien for repairs; but, after much consideration, I have, in a former case in this court, felt myself bound to decide against its authority. The Jerusalem [Case No. 7,294.] Vide 9 East, 426; 13 Ves. Jr. 594; 3 Ves. & B. 135; Franklin v. Hosier, 4 Barn. & Ald. 341. If the dockage be a lien, is it a privileged lien, having a priority over the bottomry interest? It being indispensable for the preservation of the vessel, it seems to me that it must necessarily be so considered. If it had been due for a former voyage, or the wharfinger had parted with the possession, the case would have been entirely altered.

The remaining question is, whether the plaintiffs have parted with their lien in the present case. Here is a personal contract, between them and the ship owner, for the payment of a specific rate of dockage, and an order drawn on the ship's agents for the payment thereof quarterly. It did not strike me, that upon principle such a contract could amount to a waiver of the lien; because it was in effect only ascertaining the rate of dockage, instead of leaving it in uncertainty, and upon the footing of a quantum meruit, or the usual rate of dockage. But there is a series of authorities directly in point, which decide, that where the parties enter into a personal contract for a specific sum, it is a discharge of the implied lien resulting by operation of law. And I cannot find that these authorities have ever been doubted or denied.[2] I am free to confess, that I am better satisfied with authorities, when I can perceive the reason of them; but sitting in a court of admiralty, and exercising an equitable relief against highly meritorious parties, I should not choose collaterally to overrule such explicit decisions. I must therefore dismiss the present petition, reserving however the right to reconsider these doctrines, when they shall come directly in judgment upon an original libel in rem. It is proper to add, that the admiralty jurisdiction in this class of cases is altogether independent of the doctrine of liens. Petition dismissed.

---

[2] Anon., Yel. 166; 2 Rolle, Abr. 92, "M," 1, 2; Brenan v. Currint, Sayer, 224; more fully Selw. N. P. 1163; Collins v. Ongley, cited Selw. N. P. 1163; Francis v. Wyatt, 3 Burrows, 1498; Cowell v. Simpson, 16 Ves. 275. But see Hutton v. Bragg, 2 Marsh, 339, 345, per Gibbs, C. J. See, also, Brennan v. Currant, Bull. N. P. 45; Phillips v. Rodie, 15 East, 547; Birley v. Gladstone, 3 Maule & S. 205; Id., 2 Mer. 401; Hutton v. Bragg, 7 Taunt. 14, per Gibbs, C. J. See, also, Stevenson v. Blakelock, 1 Maule & S. 535. In Chase v. Westmore, 5 Maule & S. 180, the whole doctrine is reviewed by Lord Ellenborough, and Brennan v. Currant is overruled, and the same doctrine is established, as Story, J., would seem to contend for on principle. S. P. Crawshay v. Homfray, 4 Barn. & Ald. 50; Christie v. Lewis, 2 Brod. & B. 410.