In the Matter of FREEMAN B. BIRD and FREEMAN B. BIRD, Jr., v. THE STEAMBOAT JOSEPHINE, her Tackle, Apparel, and Furniture.

*Lien on Vessels—Statute of 1862—Admiralty Jurisdiction—Unconstitutionality.*

A proceeding against a steamer by name, authorized by the statute of 1862, is a proceeding in the nature, and with all the incidents, of a suit in admiralty.

The characteristic feature of proceedings under this statute is, that it is a proceeding against the vessel itself, in which it is seized and impleaded as the Defendant, and is adjudged and sentenced accordingly.

On the 10th day of December, 1866, Freeman B. Bird and Freeman B. Bird, Jr., the attaching creditors in the above-entitled proceeding, filed specifications of lien against the steamboat Josephine, her tackle, &c., pursuant to the provisions of the Act of the Legislature of the State of New York, entitled "An Act to provide for the Collection of Demands against Ships and Vessels," passed April 24th, 1862 (Laws 1862, chap. 482), for supplies furnished by them at the city of New York to the said steamboat, between the 1st day of June, 1866, and the 5th day of December, 1866.

During the said time the steamboat was enrolled at the Custom-House in the city of New York, and was engaged in running between the port of New York and the county of Monmouth, in the State of New Jersey.

The residence of the owner of the steamboat does not appear.

On the 11th day of April, 1867, the attaching creditors duly obtained from Mr. Justice Barnard, a Justice of the Supreme Court, a warrant of attachment against the said steamboat, to enforce their said lien, and thereupon, on the 12th day of April, 1867, the Sheriff of the city and county of New York seized the said steamboat, her tackle, &c., and made his return of said seizure on the 19th day of April, 1867.

On the 4th day of May, 1867, upon an affidavit setting forth the proceedings of the said attaching creditors, the nature and amount of their claim, and the belief that, by a late decision of the Supreme Court of the United States, it was adjudged that the State Courts had no jurisdiction to enforce a lien based upon claims of the character of the said attaching creditors, and that the power to enforce such lien was vested exclusively in the Courts of Admiralty jurisdiction of the United States, an order to show cause was duly granted by his Honor Justice Barnard, upon motion of the attorney for the owner of said steamboat, directing that the attaching creditors show cause before him, on the 10th day of May, 1867, why the said warrant of attachment therefor, issued by him on the 11th day of April, 1867, should not be set aside and vacated, and staying in the meantime all proceedings on the part of the said attaching creditors.

Thereafter, upon a hearing of the said order to show cause, the said Justice rendered his decision, and made an order, which was duly entered, vacating and discharging the said warrant of attachment, upon the ground that the officer issuing the said warrant had not jurisdiction therefor, the provisions of the said statute conferring such power being in contravention of the Constitution of the United States, and of the Act of Congress vesting jurisdiction in admiralty cases exclusively in the Courts of Admiralty of the United States.

The said order vacating and discharging the said warrant of attachment having been duly entered, the said attaching creditors, on the 17th day of June, 1867, appealed from the said order to the General Term of the Supreme Court.

The said appeal was argued on the 18th day of November, 1867, and thereafter the said General Term rendered a decision reversing the said order of the 7th of June, 1867, and an order was thereupon duly entered, on the 10th day of February, 1868, in all things reversing the said order of June 7th, 1867; and thereupon the owner and claimant of the said steamboat Josephine, her tackle, &c., duly appealed from the last-mentioned order to this Court.

*Charles A. Rapallo* for Appellant.

*Pinckney & Spink* for Respondents.

MASON, J.—The question presented for adjudication is the constitutionality of the Act of the Legislature of April 24th, 1862, entitled "An Act to provide for the Collection of Demands against Ships and Vessels."

This statute declares that "Whenever a debt, amounting to fifty dollars or upwards, as to a sea-going or ocean-bound vessel, or amounting to fifteen dollars or upwards, as to any other vessel, shall be contracted by the master, owner, charterer, builder, or consignee of any ship or vessel, or the agent of either of them within this State, for either of the following purposes: 1st. On account of work done, or materials or other articles furnished in this State, for or towards the building, repairing, fitting, furnishing, or equipping such ship or vessel; 2d. For such provisions and stores furnished within this State as may be fit and proper for the use of such vessel at the time when the same were furnished . . . . . *such debt* shall be a lien upon *such vessel, her tackle, apparel, and furniture, and shall be preferred to all other liens thereon, except mariners' wages.*"

The third, fourth, and fifth subdivisions of the same section, provide in the same manner for a large class of other debts and claims against the vessel, and declare them liens in the same manner, and to the same extent.

The statute provides for a direct proceeding in rem against the vessel, by seizing the same to enforce such liens, and directs how the proceedings shall be conducted; provides for a publication in some newspaper printed in the county, &c.; and, unless the warrant shall be discharged, directs a sale by the Sheriff of the county, of the vessel seized, her tackle, &c.

The Sheriff is to return to the officer granting the order his proceedings under the same, and the proceeds, after deducting his fees, &c.; and the statute provides for the distribution of the funds, &c.

The second section of the third article of the Constitution of the

United States, among other things, declares that the judicial power of the United States shall extend " to all cases of admiralty and maritime jurisdiction."

The ninth section of the Act of Congress, approved September 24th, 1789, commonly called the Judiciary Act, declares that the District Courts of the United States shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction; saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it (1 U. S. Statutes at Large, p. 77). It will be seen, therefore, that the judicial power of the United States extends to all causes of admiralty and maritime jurisdiction; and that this Act of Congress declares that the District Courts of the United States shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, saving only a concurrent common law remedy to suitors, where the common law is competent to give it.

The terms " admiralty and maritime jurisdiction," according to etymology and received use, extend to all things done upon and relating to the sea, to transactions relating to commerce and navigation, and to damages and injuries upon the sea—all maritime contracts, *torts*, and injuries (De Lovio *v.* Boit, 2 Gall. R. 468; Dunlap's Admiralty Practice, 41 and 42).

This delegation, then, in the Judiciary Act of 1789, giving to the District Courts of the United States the exclusive cognizance of all civil causes of admiralty and maritime jurisdiction, embraces and comprehends *all maritime contracts, torts,* and *injuries* (De Lovio *v.* Boit, 2 Gall. R. 474; Dunlap's Admiralty Pr. 43).

The civilians and jurists agree that charter-parties, affreightments, marine hypothecations, contracts for maritime service in the building, repairing, *supplying*, and navigating ships, are, among other things, embraced in the term " maritime contracts " (Dunlap's Admiralty Pr. 43; 2 Gall. R. 474).

The general terms of the grant of judicial power in the Constitution of the United States to the Federal Courts, in all causes of admiralty and maritime jurisdiction, have rendered it difficult to define the exact limits of this power in the Federal Courts.

This difficulty has arisen from the following considerations : At the time of the adoption of the Constitution of the United States, Courts of admiralty and maritime jurisdiction had been established in all commercial and maritime nations, differing, however, materially in different countries in the powers and duties confided to them.

The maritime Courts of the continent of Europe formerly " included jurisdiction of all controversies respecting freight ; of damages to goods shipped ; of the wages of mariners ; of the partition of ships by public sale ; of jettison ; of commissions or bailments to masters and mariners ; of debts contracted by the master for the use and necessities of his ship ; of agreements made by the master with merchants, or by merchants with the master ; of goods found on the high seas, or on the shore ; of the armament or equipment of ships, galleys, or other vessels, and generally of all other contracts declared in the customs of the sea " (2 Gall. R. 400 ; Dunlap's Adm. Pr. 1).

This jurisdiction, at the time of the adoption of our Federal Constitution, differed very essentially in the different States, and in England, to which we have been accustomed to look for the boundaries and jurisdiction of the Common Law Courts. The Courts of Admiralty in England, after a struggle, and severe contest with the Common Law Courts for nearly two centuries, had, at the time above referred to (the adoption of our Federal Constitution), been greatly shorn of their ancient jurisdiction.

The frequent prohibitions upon their jurisdiction by the Common Law Courts, maintained as they were by a zeal and pertinacity seldom equalled, resulting in collisions so severe that the Admiralty, being compelled to yield under the Common Law to prohibitions issued against them on several occasions, sought redress in petitions to the King, which resulted in agreements, or stipulations, as to their jurisdiction ; and then, again, on complaint from the Admiralty that these stipulations were violated, in the granting of new prohibitions ; and then came new stipulations.

The results of these controversies were essentially to drive the Admiralty Courts in their jurisdiction entirely from the land to the sea, while the Common Law Courts asserted and maintained

complete concurrent jurisdiction of all causes cognizable in Admiralty, except prize cases.

The limited powers now exercised by the Courts of Admiralty in England have not been maintained without the most severe struggles, and are held by our Federal Courts not to be controlling as to the jurisdiction of our Admiralty Courts in this country.

If we turn from the Admiralty Courts in England to the American colonies, it will be seen that the Admiralty Courts in the colonies, before the American Revolution, possessed very extensive admiralty jurisdiction — more so than the Courts of Admiralty in England ; and yet their powers were not uniform in the colonies.

They were generally conferred by commissions from the King.

The commission issued to the Governor of New Hampshire was most extensive.

And the Vice-Admiralty Court in Massachusetts had jurisdiction far more extensive than that of the Admiralty Courts in England (2 Gall. R. 471, 480).

It was in this state of confusion as to admiralty jurisdiction that the Constitution of the United States was adopted, conferring, in these general terms, judicial power upon the Federal Courts in all causes of admiralty and maritime jurisdiction.

There have been other difficulties which our Courts have had to encounter in defining with precision the boundaries of the jurisdiction of the Admiralty Courts of this country, arising from the complex character of our government, where separate and distinct specified powers of sovereignty are exercised by the United States and a State, independently of each other, within the same territorial limits.

The complex character of our government has led the United States Courts, in some cases, into a novel and very ununiform system of admiralty administration, by allowing and sustaining proceedings in rem wherever the local law or statutes of a State gave a lien upon the property, instead of looking to the maritime law for its guide (The Gen. Smith, 4 Wheat. R. 438 ; 1 Sumner's R.

74, 79 ; 1 Story's Circuit C. R. 68 ; id. 246 ; The Steamer St. Lawrence *v.* Meyer et al., 1 Black's Rep. 523).

This practice was made a rule of Court in 1844, which was abolished by rule in 1858, and since that time the Courts have refused to enforce such liens in rem where they rested solely on State statutes.

The question presented in this case involves a conflict between the State and Federal Governments. The Federal Government has no power or jurisdiction except that conferred by the Constitution itself. The extent of the power withdrawn from the States and vested in the General Government, as we have seen, extends to all " cases of admiralty and maritime jurisdiction," and the extent of the power depends upon a proper construction of this constitutional provision.

Its terms are certainly indefinite, arising from the considerations to which we have above referred.

Its limits can only be ascertained by reference to what cases were understood in this country, and by the framers of the Constitution, to be cognizable in the maritime Courts, when the Constitution was formed ; for what was meant by it then, as the framers then understood it, is the true criterion by which it is to be construed.

Many of the framers of the Constitution participated in the passage of the Judiciary Act of 1789, which conferred upon the District Courts of the United States exclusive cognizance of all civil causes in admiralty and maritime jurisdiction, saving to the Common Law Courts of the States, in all cases, the right to administer common law remedies, where the common law was competent to give it.

The construction put upon this constitutional provision, therefore, by the framers of the Judiciary Act of 1789, is that the maritime jurisdiction conferred upon the Federal Courts in all admiralty and maritime causes is exclusive, and that there is no reserved concurrent jurisdiction saved to the States; and such is now the settled construction put upon this provision of the Constitution by the Supreme Court of the United States.

The proceedings in rem under the State statute of 1862, in the case under consideration, cannot be sustained, as the statute itself is unconstitutional, if this is to be regarded as a maritime contract, of which a Court of Admiralty has jurisdiction.

This question has been expressly decided by two recent decisions of the Supreme Court of the United States.

In the case of The Moses Taylor (4 Wallace, U. S. R. 411) a statute similar to our own was held to be in conflict with the Constitution of the United States; that the ninth section of the Judiciary Act of 1789, which vests in the District Courts of the United States exclusive cognizance of all civil causes of admiralty and maritime jurisdiction, is constitutional.

It was expressly held, in that case, that a statute of California, · similar to our own, which authorizes proceedings in rem against vessels for causes of action cognizable in admiralty, to that extent attempts to invest the Courts of that State with admiralty jurisdiction; that the clause in the ninth section saving to suitors the right of a common law remedy, where a common law remedy is competent to give it, does not save a proceeding in rem, as used in the Admiralty Courts.

These principles were all reaffirmed in the case of The Hine *v.* Trevor (4 Wallace R. 556), in which the State statutes of Iowa, which are very much like ours, authorizing the attachment of vessels, were held invalid, as being in conflict with the Act of Congress conferring exclusive admiralty and maritime jurisdiction upon the District Courts of the United States.

The latter was a case of maritime tort for a collision on the Mississippi River, at or near St. Louis, and the vessel was seized while lying at the landing at Davenport, in the State of Iowa.

The claim in the case under consideration was for supplies furnished to the steamer Josephine—a domestic vessel, and in her home port; but the supplies were furnished to her while she was running from the port out of the bay of New York and around to Monmouth county, in the State of New Jersey.

Now, assuming that New York city was the home port of this vessel, there was no lien under the maritime law which could be

enforced in rem in a Court of Admiralty (The Gen. Smith, 4 Wheat. R. 438; Maguire, Claimant, *v.* Stephen Card, 21 How. R. 248; The Levi Dearborne, 4 Hall's Law Journal, 97; 2 Gall. R. 483; The Two Friends, Bee's Adm. R. 433; The Robert Fulton, 1 Paine's R. 627; The President, 4 Wash. C. C. R. 453; Peyroux *v.* Howard, 7 Peters, 341; Dunlap's Adm. Practice, 54); and where a State statute gives such lien, as we have seen, our Courts of Admiralty will not enforce it (Thomas Maguire *v.* Stephen Card, 21 How. R. 248; The Steamer St. Lawrence, 1 Black, 522).

If this vessel was owned in New Jersey, as is suggested by the Appellant's counsel in his brief, then the maritime law gives a lien for these supplies, and proceedings in rem in admiralty may be taken to enforce it (The Gen. Smith, 4 Wheat. R. 438; The Jerusalem, 2 Gall. R. 349; The Sandwich, 1 Peters' Adm. R. 233, note; The Eagle, Bee's Adm. R. 78; The Aurora, 1 Wheat. R. 105; Dunlap's Adm. Pr. 54).

This case, as I understand it, admits this to be a New York vessel, and that these supplies were furnished to her in her home port, and consequently there was no lien upon the vessel, and no proceedings in rem could be taken in the Admiralty Courts.

It remains to be considered whether our Courts of Admiralty had jurisdiction in a suit in personam to enforce payment of this claim for supplies. There can be little doubt on this subject; and I will content myself by simply referring to the following authorities, in our own Courts, which fully sustain it: The Gen. Smith, 4 Wheat R. 438; 12 Wheat. R. 611; 7 id. 395; 10 id. 473; 6 How. U. S. R. 344; 3 Mason's R. 94; 1 Sumner's R. 157; 4 Mason's R. 196. The admiralty jurisdiction in a suit in personam does not depend upon the question of lien (Marshall *v.* Bazin, 7 N. Y. Leg. Obs. 342; 1 Abbot's Adm. 1; Blatchford's R. 175).

The right of admiralty to proceed in rem is cumulative in many cases, and does not exclude the remedy in personam (Brevoor *v.* The Fair American, 1 Peters' Adm. R. 487).

As it is settled by the decisions of the Supreme Court of the

United States in the cases referred to above (The Moses Taylor, 4 Wallace R. 411 ; The Hine *v.* Trevor, id. 555, 568), that exclusive cognizance conferred upon the District Courts of the United States excludes all jurisdiction from the State Courts, except such concurrent remedy as is given by the common law, it follows that these proceedings in rem, under the statute of this State, cannot be sustained.

This proceeding against this steamer by name, authorized by the statute of 1862, is a proceeding in the nature, and with all the incidents, of a suit in admiralty. The characteristic feature of the proceedings under this statute is, that the vessel proceeded against is itself seized and impleaded as the Defendant, and is adjudged and sentenced accordingly, which is just the proceeding in a Court of Admiralty in proceedings in rem.

These views lead to the reversal of the order appealed from, and the affirmance of the order of the Special Term, or of the Judge in Chambers.

Concurring : HUNT, Ch.J., and WOODRUFF, DWIGHT, and BACON, JJ.

GROVER, J. (dissenting).—The question in this case is whether, under the provisions of chapter 482, of Laws of 1862, a valid lien can be acquired upon a vessel, her tackle, &c., by furnishing provisions and stores to such vessel at her home port, within this State, while such vessel is engaged, from time to time, in making voyages from such port to Monmouth, in the State of New Jersey, and whether such lien can be enforced pursuant to the provisions of said act, or whether the said act, so far as it provides for the acquisition and enforcement of a lien in such case, is invalid. It would seem to be clear that the act is valid for the creation of a lien. It must be so for its enforcement, because, were it not so, there would be no mode of enforcing it, and the lien, for want thereof, would of necessity be a nullity.

The act is claimed to be invalid upon the ground that it conflicts with the exclusive admiralty and maritime jurisdiction vested in the Courts of the United States. If such lien and its

enforcement does so conflict, it follows that the Act is void; for when the Constitution of the United States, and the laws made in pursuance thereof, vest exclusive jurisdiction in the United States Courts, no State Court, or officer acting under that authority, can in any manner interfere therewith.

The inquiry, therefore, is, whether creating and enforcing a lien for the collection of this debt, in this case, does conflict with the exclusive jurisdiction of the United States Courts in admiralty and maritime causes.

Section 2, art. 3, of the Constitution of the United States extends the judicial power of the Government to all cases of admiralty and maritime jurisdiction. Section 9 of the United States Judiciary Act of 1789 enacts that the District Courts of the United States shall have exclusive cognizance of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common law remedy, where the common law is competent to give it.

The jurisdiction of the District Courts in admiralty and maritime cases is made exclusive. The lien sought to be enforced in the present case is not a common law remedy. It therefore follows that if enforcing the lien in the manner provided by the act, in the present case, be a proceeding in admiralty, the act is void.

It is the function of Courts of Admiralty to enforce all liens upon vessels created by virtue of the maritime law, and all such as are dependent upon or originate from that law. In respect to all such liens the jurisdiction of the United States District Courts is exclusive, and State Courts and officers cannot interfere therewith, although liens for the same cause may have been declared by State statutes, and authority to enforce the same may have been thereby attempted to be conferred upon the State Courts.

This was the point adjudged in Hine v. Trevor (4 Wallace, 555), and the only point determined which has any bearing upon the present case.

In the Moses Taylor (4 Wallace, 411) the contract was to be performed upon the high seas. It was therefore a maritime contract, and within the jurisdiction of admiralty to redress the

injuries sustained by a breach. It was therefore held that the admiralty jurisdiction was exclusive, excepting only the common law jurisdiction reserved to the States by the Act of Congress (supra).

These are the cases relied upon by the Appellant to show that the act of 1862 is invalid, in respect to the proceedings in the present case. An examination will show that the present case does not fall within the same principle.

In the present case the demand is for supplies furnished to the ship while lying at the dock at her home port (New York). No lien upon the vessel for such a demand is given by the maritime law of England or this country (2 Ld. Raymond, 806 ; The General Smith, 4 Wheat. 438 ; Barque Chusan, 2 Story, 462 ; 1 Kent's Com. 380, and cases there cited).

These cases show that, for such a demand, the only remedy is against the owner of the vessel, upon whose credit the goods are presumed to have been delivered.

It is then simply a case of the collection of a *debt* by a creditor. Over this class of cases the State authorities have plenary power.

It is for the States respectively to provide and regulate the remedies in their discretion. They may require that the creditor shall proceed according to the course of the common law, or in such other mode as it shall provide or may deem expedient.

They may provide, as in the act of 1862 in question, that the debt may be made a lien upon any of the property of the Defendant, and may provide for the enforcement of such lien as they shall deem proper, as in the case of material-men and mechanics' liens, and in other cases.

There is nothing peculiar to property in ships, when in the jurisdiction of a State, exempting it from the same liability in this respect as other property is subject to. Ships may be levied upon by execution issued by State Courts against the owners, or seized upon attachments issued in like manner.

The act of 1862 provides for creating a lien upon the vessel for the debt in the present case, and for its enforcement for its satis-

faction. This is no exercise of admiralty jurisdiction. The lien is created wholly by the local law. The maritime law, we have seen, gives none.

. It is the mere remedy provided by the State for the collection of a debt by the creditor out of the property of the debtor, and no more interferes with the exclusive jurisdiction of the District Courts than it would had the statute provided for a lien upon any of the other property of the debtor.

Under the rules adopted by the Supreme Court of the United States in 1844, for the government of the District Courts in admiralty cases, those Courts entertain jurisdiction in rem, founded upon the lien given by the State law, in cases like the present; and such jurisdiction was sustained by the former Court (Peyroux *v.* Howard, 7 Pet. 341; The Case of Steamer St. Lawrence, 1 Black, 522). The exercise of this jurisdiction continued until 1858, when the rule was changed by the Court, by providing that, in cases like the present, process should only issue in personam— thus relieving the District Courts from their duty to enforce liens created by the State laws; leaving such liens to be dealt with by the State authorities.

The lien does not depend for its validity upon the rules of the Supreme Court of the United States, but upon the constitutional powers of the States to pass the acts providing for it.

We have seen that liens under State laws were held valid by that Court, prior to the change in its rule in 1858; and they have not been adjudged invalid by it in any case like the present since.

But it is said that inasmuch as the Admiralty Courts issue process in personam against the debtor for the collection of debts, like the one in the present case, and thus entertain jurisdiction, such jurisdiction is exclusive, by the Act of Congress, of all other, except common law remedies, for the collection thereof. But I think the Act of Congress was only designed to embrace cases where the admiralty proceeded, according to the more usual course of that Court, in rem, and not to cases where it proceeded in personam.

There is a reason for excluding jurisdiction in the former which

2

does not exist in the latter; viz. to avoid conflicting claims to property arising under conflicting jurisdictions.

That this was the object appears from the saving of the common law remedies in the State Courts, in cases where the admiralty proceeds in rem. Taking away from the States the exercise of other powers could confer no advantage upon any one. The proceedings under the act of 1862, in the present case, are similar to proceedings had under similar State statutes for a great number of years, during which their validity has not been questioned. Important rights have been acquired thereby.

This is not conclusive, but is entitled to consideration in determining their validity. My conclusion is that they are valid in all cases where the admiralty cannot proceed in rem, by virtue of the maritime law. This leads to an affirmance of the order appealed from.

Reversed.

JOEL TIFFANY,
State Reporter.