## Case No. 7,137.

### JACKSON et al. v. The KINNIE.

[8 Am. Law Reg. (N. S.) 470.]

District Court, D. New Jersey. 1869.

Hamilton and Wallis, for libellants.

Jonathan Dixon, Jr., for intervenors.

FIELD, District Judge. It is insisted by the libellants that the Hoboken Coal Company have no standing in court, that they have no lien upon this vessel which a court of admiralty will recognise or enforce, and that consequently they have no right to intervene for their own interest, or to contest the claims of the libellants. It is admitted that the propeller was owned in this state, that the intervenors were a corporation organized and carrying on business in this state, and that the supplies were furnished in this state. It is a case then of a domestic vessel, and supplies furnished in a home port. By the maritime law of continental Europe, no distinction is made between the cases of domestic and foreign ships, nor between supplies furnished in a home port and abroad. But by the maritime law of England and of this country, supplies furnished to a domestic vessel, in a home port, are presumed to be furnished on the personal credit of the owner or master, and do not create a lien, which can be enforced in a court of admiralty by proceedings in rem. But the intervenors claim to have a lien upon this vessel, in virtue of an act of the legislature of New Jersey, approved March 20th, 1857. The title of the act is, "An act for the collection of demands against ships, steamboats, and other vessels" [Laws N. J. 1857, p. 382]. 4 Nixon's Dig. 576. The act, with the supplement thereto, approved March 18th. 1858 [Laws N. J. 1858, p. 464], provides that, "Whenever a debt amounting to $50 or upwards shall be contracted by the master, owner, agent. or consignees of any ship. or vessel within this state, for either of the following purposes, namely, on account of any work done, or materials or articles furnished in this state, for or towards the build-

ing, repairing, fitting, furnishing, or equipping such ship or vessel, or for wharfage and the expenses of keeping such vessel in port, including the expense incurred in employing persons to watch her, such debt shall be a lien upon such ship or vessel, her tackle, apparel, and furniture, and shall be preferred to all other liens thereon, except mariners' wages." The act then proceeds to make provision for enforcing this lien. Application may be made to a supreme court commissioner for a warrant, to be directed to the sheriff, or a constable, or in their absence, to any coroner of the county, commanding him to attach, seize, and safely keep said ship or vessel to answer such lien. Notice of the issuing of the warrant is to be published in a newspaper printed in the county, and unless the lien is satisfied, or the warrant discharged, the ship or vessel is to be sold, and the proceeds to be distributed in the manner directed by the act. Is this act of the legislature of New Jersey, so far as it authorizes proceedings in rem against a ship or vessel, in violation of the constitution of the United States; and is the lien thereby attempted to be created one which a court of admiralty will recognise or enforce? The constitution declares, in the 2d section of the 3d article, among other things, that the judicial power of the United States shall extend "to all cases of admiralty and maritime jurisdiction." And the 9th section of the judiciary act of 1789 [1 Stat. 76] provides that the district courts of the United States shall have exclusive original jurisdiction of all civil causes of admiralty and maritime jurisdiction; saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it. It will be seen, therefore, that the jurisdiction of the district courts of the United States, over all admiralty and maritime causes, is exclusive, with the exception of such concurrent remedy as is given by the common law. There is eminent wisdom and propriety in giving to the courts of the United States exclusive jurisdiction in such cases. "The most bigoted idolizers of state authority," said the Federalist, "have not thus far shown a disposition to deny the national judiciary the cognisance of maritime causes. These so generally depend on the law of nations, and so commonly affect the rights of foreigners, that they fall within the considerations which are relative to the public peace." The Federalist, No. 80, p. 591.

"The admiralty jurisdiction," says Judge Story, "naturally connects itself, on the one hand, with our diplomatic relations and duties to foreign nations and their subjects; and, on the other hand, with the great interests of navigation and commerce, foreign and domestic. There is, then, a peculiar wisdom in giving to the national government a jurisdiction of this sort, which cannot be wielded except for the general good, and which multiplies the securities for the public peace abroad, and gives to commerce and navigation the most encouraging support at home." 3 Story, Comm. 533. That these cases, intended to be provided for by the act under consideration, are maritime contracts, and therefore "civil causes of admiralty and maritime jurisdiction," there can be no doubt. De Lovio v. Boit [Case No. 3,776]; Dunl. Adm. Prac. 43. They are therefore within the exclusive jurisdiction of the district courts of the United States. This question has been repeatedly decided by the supreme court of the United States. Statutes, similar in every respect to that of New Jersey, have been enacted in most of the states; and whenever they have come under the consideration of the supreme court they have been held to be unconstitutional and void, so far at least as they authorize proceedings in rem. Thus, in the case of The Moses Taylor, 4 Wall. [71 U. S.] 411, it was held that a statute of California, which authorizes actions in rem against vessels for causes of action cognizable in admiralty, to that extent attempts to invest her courts with admiralty jurisdiction, and is therefore unconstitutional. "The action against the steamer by name," say the court, "authorized by the statute of California, is a proceeding in the nature and with the incidents of a suit in admiralty. The distinguishing and characteristic feature of such suit is that the vessel or thing proceeded against is itself seized and impleaded as the defendant, and is judged and sentenced accordingly. It is this dominion of the suit in admiralty over the vessel or thing itself which gives to the title made under its decrees validity against all the world." And in the case of The Hine v. Trevor, 4 Wall. [71 U. S.] 555, where a similar statute of Iowa was under consideration, the court held that state statutes, which attempt to confer upon state courts a remedy for marine torts and marine contracts by proceedings strictly in rem, are void. In this case it was contended that the statute of Iowa might fairly be construed as coming within the clause of the 9th section of the judiciary act, which "saves to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it." But the court say the remedy prescribed by the statute is in no sense a common-law remedy. It is a remedy partaking of all the essential features of an admiralty proceeding in rem. The statute provides that the vessel may be sued and made defendant without any proceeding against the owners, or even mentioning their names. And while the proceeding differs thus from a common-law remedy, it is also essentially different from what are called suits by attachment. In these cases there is a suit against a personal defendant by name, but because of inability to serve process on him, on account of non-residence or some other reason, the suit is

commenced by a writ, directing the proper officer to attach sufficient property of the defendant to answer any judgment which may be rendered against him. But, besides these decisions of the supreme court of the United States, we have a recent decision of the court of appeals of New York, in a case involving the constitutionality of a statute of that state, precisely similar to our own, from which in fact our statute was copied. It is the case of Bird v. The Josephine [39 N. Y. 19]. The court decided that the proceeding authorized by their statute against a vessel by name was a proceeding in the nature, and with all the incidents, of a suit in admiralty; that such a proceeding could not be sustained; and that the statute itself was unconstitutional. It is pleasant to find this concert and harmony of opinion between the court of appeals of the state of New York and the supreme court of the United States, upon a question of conflicting jurisdiction between state and federal courts. But it is insisted, that although the statute of New Jersey may be unconstitutional, so far as it authorizes proceedings in rem against a ship or vessel for a breach of maritime contract, yet it nevertheless creates a lien upon such vessel, which a court of admiralty will recognise and enforce. There was a time when such an argument might have been successfully urged. The effect of such statutes undoubtedly is, to assimilate our law to that of continental Europe, or, in the language of Chief Justice Watkins, in Merrick v. Avery, 14 Ark. 378, "to extend the privilege of the maritime lien upon sea-going vessels for their building or equipment in domestic ports, just as that lien existed in Europe, and would have prevailed in England, and so descended to this country, but for the jealousy of the common law." And it is undoubtedly true, that, for many years, the supreme court of the United States, by repeated decisions, held, that these liens thus created by local law might be enforced by proceedings in rem in the district court; and that in 1844 they adopted a rule, expressly authorizing the process in rem where the party was entitled to a lien under the local or state law. But it is equally true that this rule has since been abrogated, and that such liens can no longer be enforced by proceedings in rem in the district court.

Chief Justice Taney, in delivering the opinion of the supreme court in the case of The St. Lawrence, 1 Black [66 U. S.] 522, gave a brief but lucid history of the legislation of congress upon this subject, of the course of decisions by the supreme court, and of the reasons which led to the adoption of the 12th rule, in the first instance, and its subsequent repeal. After the passage of the judiciary act of 1789 [1 Stat. 93], congress passed the act prescribing the process to be used in the different courts it had established; and by that act directed that, in the courts of admiralty and maritime jurisdiction, the forms

and modes of proceedings should be according to the course of the civil law. This act left no discretionary power in the admiralty courts, or in the supreme court, in relation to the modes and forms of proceeding. But this difficulty was soon seen and removed, and by the act of May 8th, 1792 [1 Stat. 275], these forms and modes of proceeding are to be according to the principles, rules, and usages which belong to courts of admiralty, as contradistinguished from courts of common law; and are made subject to such alterations and additions as the respective courts might deem expedient, "or to such regulations as the supreme court of the United States shall think proper from time to time by rule to prescribe to any circuit or district court concerning the same." And the power here conferred upon the supreme court was afterwards enlarged by the act of August 23d, 1842 [5 Stat. 516]. It was under the authority of these two acts that the 12th rule, to which we have referred, was made in 1844, and afterwards altered by the rule adopted in December, 1858. In the meantime, by a series of decisions in the supreme court, it had been held, that where liens had been given by the local law, the party was entitled to proceed in rem in the admiralty court to enforce it. The General Smith, 4 Wheat. [17 U. S.] 438; Peyrouse v. Howard, 7 Pet. [32 U. S.] 324; The New Orleans v. Phoebus, 11 Pet. [36 U. S.] 175. When the rules, then, were framed in 1844, in conformity to the practice thus adopted, it was provided by the 12th rule, that: "In all suits by material-men for supplies or repairs or other necessaries for a foreign ship, or for a ship in a foreign port, the libellant may proceed against the ship and freight in rem, or against the master, or the owner alone, in personam; and the like proceedings in rem shall apply to cases of domestic ships, where, by the local law, a lien is given to material-men for supplies, repairs, or other necessaries." Now, there would have been no embarrassing difficulties in thus using the ordinary process, in rem, of the civil law, if the state law had given the lien in general terms, without specific conditions or limitations inconsistent with the rules and principles which governed implied maritime liens. On the contrary, such process would have promoted the convenience and facilities of trade and navigation by the promptness of its proceedings, and would have disposed at once of the whole controversy, without subjecting the party to the costs and delay of a proceeding in the chancery or common-law courts of the state to obtain the benefit of his lien. In many of the states, however, it was soon discovered that these laws, by which liens were thus created, did not harmonize with the principles and rules of the maritime code. Certain conditions and limitations were annexed to them; and these conditions and limitations differed in different states; and it became manifest

that if the process in rem was to be used wherever the local law gave the lien, it would subject the admiralty court to the necessity of examining and expounding the varying laws of every state, and of carrying them into execution, and that, too, in controversies where the existence of the lien was denied, and the right depended altogether on a disputed construction of a state statute, or, indeed, in some cases of conflicting claims, under statutes of different states, when the vessel had formerly belonged to the port of another state, and had become subject to a lien by the state law. Such duties and powers are appropriate to the courts of the state which created the lien, but are entirely alien to the purposes for which the admiralty power was created, and form no part of the code of laws which it was designed to administer. The proceeding. therefore, in rem, upon the ground that the local law gave the lien where none was given by the maritime code, was found upon experience to be inapplicable to our own mixed form of government. It was found to be inconvenient in most cases and absolutely impracticable in others; and the rule which sanctioned it was therefore repealed. The repealing rule provides that,—"In all suits by material-men for supplies or repairs or other necessaries for a foreign ship, or for a ship in a foreign port, the libellant may proceed against the ship and freight in rem, or against the master or owner alone in personam. And the like proceedings in personam, but not in rem, shall apply to cases of domestic ships for supplies, repairs, or other necessaries." The consequence is, that in cases of domestic ships, for supplies furnished at a home port, a lien created by a state law is one which a court of admiralty can neither recognize nor enforce. Hence it follows, that in this case, the Hoboken Coal Company have no standing in court, have no right to intervene. either for their own interest or to contest the claims of the libellants, and that the testimony taken on their behalf must be stricken out. Let judgment be entered in favor of the libellants, with costs as against the intervenors.