## Case No. 2,720a.

### The CIRCASSIAN.

### WICKES v. The CIRCASSIAN.

[5 Chi. Leg. News, 146; 12 Am. Law Reg. (N. S.) 291; 5 Am. Law T. Rep. U. S. Cts. 482; 6 Alb. Law J. 401; 7 Am. Law Rev. 575.]

District Court, S. D. New York. Nov. 1872.[1]

SUPPLIES FURNISHED IN HOME PORT — LIEN — CONSTRUCTION OF ADMIRALTY RULE 12.

1. Where necessaries are furnished to a vessel in the port or state where she belongs, the general maritime law does not give to the party furnishing them a lien on the vessel herself for his security.

2. The history of the 12th rule in admiralty given, and the decisions under it explained.

3. The amended 12th rule of May 6, 1872, which provides that "in all suits by materialmen, for supplies or repairs, or other necessaries, the libellant may proceed against the ship and freight in rem, or against the master or owner alone in personam," does not apply to suits brought, or to supplies, etc., furnished, before that date.

4. The purport of the rule is to provide that, in every case of a contract for supplies, etc., to a vessel, domestic or foreign, being a maritime contract, made after the rule takes effect, process in rem against the vessel or in personam against her master or owner, may optionally be resorted to where a suit is required to enforce the contract.

[In admiralty. Libel by Henry N. Wickes, against the steamboat Circassian for supplies furnished in the home port.]

W. W. Goodrich and W. R. Beebe, for libellant.

W. A. Butler and T. E. Stillman, for claimant.

BLATCHFORD, District Judge. This libel is filed to recover against the steamship Circassian the sum of $3.936 for coal and wood furnished to her at New York, in October, 1866, she being then a domestic vessel, owned in New York, and bound on a voyage to Europe. The supplies were furnished by the firm of C. H. Bass & Co., who have assigned their claim to the libellant. The debt was contracted at the request of the agent of the vessel, the supplies were put on board of the vessel, and receipted for by the master, they were proper supplies for her intended voyage, and the evidence shows that credit was, in fact, given to the vessel, because of the want of pecuniary responsibility of the owner of the vessel. The libellants supposed at the time that the statute of New York would give them a lien which they could enforce by proceedings in rem against the vessel, according to the mode prescribed by that statute. The libel alleges that the claim is, by the maritime law, a lien on the vessel, and also that it was, at the time the supplies were furnished, and now is, a lien on the vessel by the law of the state of New York.

After the decision in the case of The Gen-

eral Smith, 4 Wheat. [17 U. S.] 438, in 1819, it was no longer open to question, in the courts of the United States, that, where necessaries are furnished to a vessel in the port or state where she belongs, the general maritime law does not give to the party furnishing them a lien on the vessel herself for his security. The point arose directly, in that case, and was necessarily decided. The vessel was owned in Baltimore, Maryland, and the supplies were furnished to her at Baltimore. The supreme court held that there was no lien by the law of Maryland. This being so, there was no lien at all, and no foundation for the suit, which was one in rem, unless there was a lien by the general maritime law. The supreme court decided that there was no lien by the general maritime law. This decision has been recognized as a correct one in numerous cases since, which have come before the supreme court, to and including the case of The Kalorama, 10 Wall. [77 U. S.] 204, 208, 211, at the December term, 1869, in which last case it is said that "the question was put to rest" by the decision in the case of The General Smith. It had become a rule of property, established for nearly fifty years, when the supplies in the present case were furnished.

In the opinion of the court in the case of The General Smith, it was remarked that, "in respect to repairs and necessaries in the port or state to which the ship belongs, the case is governed altogether by the municipal law of that state, and no lien is implied, unless it is recognized by that law." This remark was understood to suggest that, where the municipal law of the state gave or recognized the lien, it would be enforced in the admiralty court. Accordingly, in the case of Peyroux v. Howard, 7 Pet. [32 U. S.] 324, in 1833, it was held that the district court had jurisdiction of a suit in rem against a vessel for materials supplied and work performed, in repairing her at New Orleans, on the ground that the contract was a maritime contract, that the service was to be performed within the ebb and flow of the tide, and, therefore, within the jurisdiction of the admiralty, and that the local law of Louisiana gave a lien in the case. In The Orleans v. Phoebus, 11 Pet. [36 U. S.] 175, in 1837, it was stated that the decision in Peyroux v. Howard proceeded on the ground that, where the contract was a maritime one and the state law gave a lien, the admiralty had, in the first place, jurisdiction of the contract, as a maritime one, and then, finding that the lien had, by the state law, attached, would enforce such lien according to the mode of administering remedies in the admiralty. The jurisdiction of the admiralty was regarded as vesting under the laws of the United States, and not under the local law of the state, the latter law only conferring the right to a lien, which the admiralty, having jurisdiction of the maritime contract, would enforce by the appropriate admiralty remedy. Accordingly,

---

[1] [Affirmed in Case No. 2,726.]

the court decided that the admiralty court had no jurisdiction of a suit in rem against a vessel, to recover a claim by a master for his wages, as master, and for necessaries advanced by him to the vessel, while he acted as master, because the services and disbursements were not maritime, and that it made no difference that a lien was given by the local law, so long as the contract was not maritime. Following out these principles, it was stated by the supreme court, in Ferry Co. v. Beers, 20 How. [61 U. S.] 393, 402, in 1857, that it had never sanctioned the doctrine that admiralty jurisdiction in rem existed against a vessel, to enforce a carpenter's bill for work and materials furnished in constructing the vessel, because a lien had been created by the local law of the state where the vessel was built.

At the December term, 1844, the supreme court, in the exercise of what it regarded as the authority given to it by the sixth section of the act of August 23, 1842 (5 Stat. 518), to prescribe and regulate the forms of process and the forms and modes of framing proceedings and pleadings, and generally the forms and modes of proceeding to obtain relief, and generally to regulate the whole practice in suits in admiralty in the federal courts, promulgated the following rule, to take effect from the 1st of September, 1845, as a rule for the regulation and government of the practice of the circuit and district courts of the United States in suits in admiralty on the instance side of the courts: "Rule 12. In all suits by material-men for supplies or repairs, or other necessaries, for a foreign ship, or for a ship in a foreign port, the libellant may proceed against the ship and freight in rem, or against the master or owner alone in personam. And the like proceeding in rem shall apply to cases of domestic ships, where, by the local law, a lien is given to material-men for supplies, repairs or other necessaries." This rule recognized, in regard to domestic vessels, the principles as to liens which the supreme court understood to be recognized by the cases of The General Smith, Peyroux v. Howard, and The Orleans v. Phoebus, and established no new rule or practice. Those principles were, that where repairs were made or necessaries were furnished to a vessel in the port or state to which she belonged, the case was governed by the local law of the state, and no lien was implied unless it was recognized by that law; but that, if the local law gave the lien, it might be enforced in admiralty. The supreme court stated the principles in those terms, in 1847, in New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344, 201. At the December term, 1858, in Allen v. Newberry, 21 How. [62 U. S.] 244, the supreme court held that the district court for Wisconsin had no jurisdiction of a libel in rem against a vessel for the loss of goods shipped on board of the vessel at one

port in Wisconsin, to be delivered at another port in Wisconsin, and, at the same term, in Maguire v. Card, Id. 248, it held that the district court for California had no jurisdiction of a suit in rem against a vessel to recover for coal furnished to it in California, it being engaged in trade exclusively within California, although a lien for the coal was then given by local law of California. The court then proceeded, at the same term, to repeal the 12th rule of December term, 1844, and to substitute in its place the following rule of practice, to take effect from May 1, 1859: "In all suits by material-men for supplies or repairs, or other necessaries for a foreign ship, or for a ship in a foreign port, the libellant may proceed against the ship and freight in rem or against the master or owner alone in personam. And the like proceeding in personam, but not in rem, shall apply to cases of domestic ships, for supplies, repairs or other necessaries." The first sentence of the new rule was in the same words as the first sentence of the old rule. The second sentence of the old rule read as follows: "And the like proceeding in rem shall apply to cases of domestic ships, where, by the local law, a lien is given to material-men for supplies, repairs or other necessaries." The words in italics in the old rule were omitted in enacting the new rule, and the words in italics in the new rule were inserted in enacting that rule. By the new rule the court intended to provide, and did provide, that a proceeding in rem should not be allowed in the admiralty against a domestic ship, for supplies, repairs or other necessaries, furnished to her, even though a lien on the vessel was given therefor to the material-man by the local law. The right to proceed in rem against the vessel in the admiralty, in the case of Maguire v. Card, was given by the letter of the old rule, then in force, but the court held that it did not extend to a contract growing out of the purely internal commerce of a state, and not extending to or affecting other states or foreign countries. It also said, in its opinion in the case, referring to the new 12th rule, that it had provided, by that rule, for leaving all liens which depended on the state laws, and did not arise out of maritime contracts, to be enforced by the state courts.

The purport and meaning of the new 12th rule were explained by the supreme court in the case of The St. Lawrence, 1 Black, [66 U. S.] 522, in 1861. The case was one of supplies furnished to a domestic vessel, at New York, in regard to which a lien on the vessel had been acquired under the local law, and a suit in rem, to enforce the lien, had been brought in the district court, against the vessel, before the new 12th rule took effect. The supreme court held that the libellant was entitled to a decree. It upheld the jurisdiction of the admiralty to enforce such a lien, founded on a maritime contract, even

though the lien was created by the local law, and did not exist as a maritime lien. It stated that the alteration in the 12th rule applied altogether to the process to be used, and had no relation to the question of jurisdiction; that, in reference to the enforcement of a maritime contract, justifiable in the admiralty, congress, and the supreme court, by authority of congress, had a right to prescribe whether the jurisdiction should be exercised by an attachment of property, or merely by a suit against a person, or by both; that the contract, if maritime, was equally within the jurisdiction of a court of admiralty, whether process against the vessel were issued, because the supplies were presumed to be furnished on her credit, under the Maritime Code, or because a lien on the vessel therefor was given by the local law, or whether only process against the person were issued, because the supplies were presumed, by the Maritime Code, to be furnished on the personal credit of the master or owner of the vessel, and no lien therefor was given by the local law; that the old 12th rule, as well as the new 12th rule, was merely "a rule of practice;" that a lien given by a state law was enforced in the admiralty, not as a right which the admiralty court was bound to carry into execution on the application of the party, but as a discretionary power; and that the repeal of the old 12th rule proceeded on the ground that it was not convenient or practicable for the admiralty court to enforce liens which rested on the local law for their support. The old 12th rule was held to apply to cases commenced before the new 12th rule took effect, and the new 12th rule was held not to apply to such cases. At the December term, 1866, the supreme court, in The Moses Taylor, 4 Wall. [71 U. S.] 411, had under consideration a statute of the state of California, which made a vessel liable for services, supplies, materials, and some other matters of contract, and sundry torts, and constituted such causes of actions liens on the vessel, and authorized actions for such causes to be brought directly against the vessel, by name, with an attachment of her, and, if a judgment should be recovered, a sale of her, to satisfy the judgment. The court held that such statute, to the extent in which it authorized actions in rem against vessels for causes of action cognizable in the admiralty, invested the courts of California with admiralty jurisdiction; that the cognizance by the federal courts of civil causes of admiralty and maritime jurisdiction had been made exclusive by congress; and that the state court of California had no jurisdiction of a proceeding in rem against a vessel, under such statute, for a breach of a contract by her owner to transport a passenger from New York to San Francisco. In the case of The Hine v. Trevor (at the same term) 4 Wall. [71 U. S.] 555, the supreme court had under consideration a statute of Iowa, which gave a lien on a vessel for injury to property by such vessel, and authorized the seizure and sale of the vessel therefor, without any process against her owner or master. It held that a state court of Iowa had no jurisdiction, under that statute, of such direct proceeding against a vessel for such a cause of action, for the reason that the cause of action was one of admiralty cognizance, and within the exclusive jurisdiction of the admiralty courts of the United States. In March, 1868, the court of appeals of this state, in the case of In re The Josephine, 39 N. Y. 19, following the two decisions in 4 Wallace, held that a proceeding against a vessel, by name, in a state court of New York, under the New York statute of April 24, 1862 (Laws 1862, c. 482), on a lien given by such statute for supplies furnished to the vessel, was void, for want of jurisdiction, because exclusive cognizance of such a proceeding belonged to the district courts of the United States, the contract being a maritime one. This view was reiterated by the same court, in Brookman v. Hamill, in May, 1871, 43 N. Y. 554. Judge Rapallo, in delivering the opinion of the court in that case, says, with great accuracy: "Although our courts of admiralty may not recognize the lien of material-men for supplies to domestic vessels, not deeming the credit given to the vessel, they have retained jurisdiction over the subject of these claims, and whatever restrictions now exist as to the remedy are self-imposed by our own courts, and do not arise from any lack of jurisdiction over the subject. In view of the doctrine of the case of The St. Lawrence, I can see no want of power in the supreme court, should it see fit so to do, to restore the rule of 1844, or to allow a remedy in rem to material-men in all cases. * * * And, if the necessities of commerce require that, in this country, there should be a remedy in rem in all cases of material-men, it is much more appropriate that it should be administered by the courts of admiralty, than under the laws which may, from time to time, be in force in the several states, especially in respect to vessels not engaged exclusively in the internal commerce of a state, but which may be subject to liabilities incurred in different states, or in foreign countries, in favor of persons other than the attaching creditor." In this state of the decisions, the supreme court, on the 6th day of May, 1872, amended the 12th rule, so as to make it read as follows: "In all suits by material-men, for supplies or repairs, or other necessaries, the libellant may proceed against the ship and freight in rem, or against the master or owner alone in personam." The 12th rule of May 1, 1859, which was so amended, read thus: "In all suits by material-men for supplies or repairs, or other necessaries, *for a foreign ship, or for a ship in a foreign port,* the libellant may proceed against the ship and freight in rem, or against the master or owner alone in personam. *And the like proceeding in personam, but not in rem, shall ap-*

*p'y to cases of domestic ships, for supplies, repairs, or other necessaries."* The words in italics above, in the rule of 1859, were stricken out, and that was the only change made, to arrive at the rule of 1872.

What is the meaning and effect of the rule of 1872? The rule of 1859. recognizing the law of the courts of the United States as to maritime liens for supplies, etc., gave process in rem or in personam, optionally, in case of supplies. etc., to a foreign ship, or a ship in a foreign port; and gave process in personam, but not in rem, in case of supplies. etc., to a domestic ship. Jurisdiction of all contracts for such supplies, etc., belongs to courts of admiralty of the United States, under the constitution and statutes, because such contracts are contracts of admiralty and maritime jurisdiction, but process in rem was allowed, by the rule of 1859, only in the case of a foreign ship, and was refused in the case of a domestic ship. The rule of 1872 provides, and was intended to provide, that, in every case of a contract for supplies. etc., to a vessel, domestic or foreign, being a maritime contract, process in rem against the vessel, or in personam against her master or owner, may, optionally, be resorted to, where a suit is required to enforce the contract. The libel in this case was filed on the 21st of May, 1872. The coal was furnished in 1866. The suit was brought after the rule of 1872 went into effect, but the supplies were furnished before that rule went into effect. When the supplies were furnished, no process in rem could be issued against the vessel therefor. There was no lien on the vessel therefor by the general maritime law, and the 12th rule of 1859 forbade the issuing of process in rem against the vessel, because she was a domestic vessel. The contract was made in view of this state of things, and no remedy in rem existed under the state law, because the provision therefor was void. The rule of 1872 now comes into effect. But, in the absence of all words indicating an intention that the rule shall apply to cases of supplies, &c., furnished before the rule took effect, it must be held, on familiar principles of interpretation, to apply only to cases of supplies, &c., furnished after it takes effect. The same principle which always applies to the interpretation of a statute must be applied to the construing of this rule. All statutes are to be considered prospective, unless the language is express to the contrary, or there is a necessary implication to that effect. U. S. v. Heth, 3 Cranch [7 U. S.] 399; Harvey v. Tyler, 2 Wall. [69 U. S.] 328, 347. There is nothing in the rule of 1872 to indicate an intention to give a remedy in rem against a domestic vessel where the supplies, etc., were furnished before the rule took effect.

Another consideration is of force. The supreme court, on the 6th of May. 1872, expressly state that they amend the 12th rule of 1859 so as to read thus and so. They do not repeal the 12th rule of 1859. By their order of May 1, 1859, they repealed the 12th rule of December term, 1844, and prescribed a new 12th rule. The 12th rule of 1859 is amended from and after May 6, 1872, so as to read in the new form thereafter, in respect to suits to be brought thereafter for supplies, etc., to be furnished thereafter. In respect to suits brought before May 6, 1872, and on or after May 1, 1859, for supplies, etc., furnished between those dates, and in respect to suits brought on or after May 6, 1872, for supplies, etc., furnished before May 6, 1872; and after the 12th rule of 1859 went into operation that rule is to govern; for, it is still left in force in respect to cases not covered by the amendment of 1872. That rule expressly forbids process in rem in the present case. It results that the libel must be dismissed, with costs.

[NOTE. Libellant appealed to the circuit court, where the decree herein was affirmed. See Case No. 2,726.]