WALTER S. VOSE and JAMES T. JOYCE, Respondents, v. JACOB H. V. COCKCROFT and ARTHUR LEARY, Appellants.

The provisions of the Revised Statutes (title 8, chapter 8, part 3; as amended, chap. 79, Laws 1859), for a special proceeding *in rem* against ships, by attachment, to enforce a lien for supplies, etc., furnished for the use thereof, are unconstitutional and void, as conflicting with the exclusive admiralty jurisdiction of the federal courts.

In civil proceedings, the protection of any statutory or constitutional provision may be waived, and a party may be estopped by his acts from denying the constitutionality of a law or proceeding.

In an action upon a bond, given to obtain the release of a vessel from attachment, under the above provisions of the Revised Statutes, the defendant having entered into stipulations which, by fair inference, recognized the validity of the statute, and having failed to allege its unconstitutionality by answer or on the trial, must be deemed to have waived that defence.

The bond being given under the provisions of the statute, to procure release of the vessel, is given *in invitum*, and the attachment being unconstitutional, the bond is also void.   HUNT, C.

(Argued January 11th; decided May 1st, 1871.)

APPEAL from an order of the General Term of the Supreme Court, in the first district, affirming a judgment in favor of the plaintiff.

This is an action upon a bond, given for the release of the brig Jachin from a warrant of attachment, issued under the following circumstances: The defendant, Cockcroft, was the owner of the brig, he being a resident of the city of New York, and the vessel being in a domestic port at the time mentioned, and one Lovejoy the master thereof.

Lovejoy, as such master, on March 9th, 1859, contracted a debt with the plaintiffs, on account of materials and supplies, and articles furnished for or toward the fitting, furnishing and equipping the brig, and for provisions and stores fit and proper for her use, and which were of the value of $231.56.

The plaintiffs duly filed specifications, as required by the statute giving liens on domestic vessels, and applied for a warrant to enforce the lien, in July, 1859, and the vessel was

arrested under said warrant. The defendants gave the bond set up in the pleadings, to release her from that arrest.

At the time these provisions and stores were furnished, Lovejoy was sailing the vessel under a written agreement with her owner, the defendant, Jacob H. V. Cockcroft, of which the following is a copy:

"NEW YORK, *May* 14, 1858.

"It is this day mutually agreed, between J. H. V. Cockcroft, owner of the brig *Jachin*, and Lorenzo W. Lovejoy, that the latter shall take charge of the said brig *Jachin*, and sail her in shares, as is customary in such cases, that is, the master shall pay all bills for wages of officers and crew, and furnish provisions therefor, also one-half of all bills for extra labor, stevedores, towages, wharfage, dunnage, commissions, chronometer hire, and other port charges; he shall conduct the business of the vessel in a proper manner, and in consideration of these services, and as wages for himself, shall receive one-half of the gross amount of freight earned by said brig *Jachin* during the period that he remains master of the vessel aforesaid.

"J. H. V. COCKCROFT.
"L. W. LOVEJOY."

Lovejoy remained in charge of the brig as master, under this agreement, until the provisions and supplies furnished by the plaintiffs were put on board, when Cockcroft assumed the control of the brig, and discharged him, and the supplies, etc., were afterwards used in and upon and for the benefit of the vessel.

The plaintiffs had previously owned this vessel, and had sold her to Cockcroft, and Lovejoy had sailed the vessel for the plaintiffs under an agreement similar to that with Cockcroft. Lovejoy had bought his stores of the plaintiffs for this vessel for several voyages before, for which he had paid them out of his share of the earnings of the vessel, when the vessel returned from the voyage for which the stores were furnished.

He ordered this bill of stores from the plaintiffs, and understood from the plaintiffs that he was liable for them.

The referee held, as matter of law, that the debt was a subsisting lien upon the vessel, and was duly exhibited, and that by reason of the non-payment thereof the conditions of the bond had been broken.

Judgment was entered upon this report, which was affirmed at the General Term.

The case below is reported 45 Barbour, 58.

*Charles N. Black,* for the appellants, cited *In re Josephine* (39 N. Y., 19); *Kerzel* v. *Kirk* (32 How., 269); *Ford* v. *Crocker* (48 Barb., 142); *Tracy* v. *Wheeler* (18 Abb., 73).

*E. C. Benedict,* for the respondents, cited, as to the validity of the proceedings, *Kerzel* v. *Kirk ; Ford* v. *Crocker ; Saxton* v. *Reed* (Lalor, 328); *McCready* v. *Thorne* (48 Barb., 438); *Pendleton* v. *Franklin* (7 N. Y., 508); *Low* v. *Austin* (20 id., 181); *Veltman* v. *Thompson* (3 Comst., 438); *The Chusan* (2 Story, 462); *The St. Lawrence* (1 Black, 522); *The Potomac* (2 id., 583); *Bains* v. *The James and Cutharine* (1 Baldw., 544); *The Christian* (2 Story, 455). That the objection was waived, he cited *Ford* v. *Townsend* (Rob't 39); *Johnson* v. *Sasent* (2 Ld. Raym., 1459); *Pendleton* v. *Franklin* (3 Sandf., 572); *Mitchell* v. *Thorp* (5 Wend., 288); *Farr·* v. *Pymer* (2 Ch. Sent., 20); *Shepherd* v. *Watson* (3 Caines, 166); 1 Chitty Pl., 425.

HUNT, C. The appellants, argue that the statute, under which the warrant of attachment was issued, is in conflict with the Constitution and laws of the United States, and void. Hence, they argue, the bond upon which the action is brought is also void, and all the proceedings in the action, including the judgment, are void and without effect. The decision in *The Josephine* (39 N. Y., 19) is cited as controlling this case.

In that case, arising under the act of 1862, the facts were as follows : The vessel was enrolled at the custom-house in New

HAND—VOL. V.          53

York, and adjudged to be in a domestic port. The plaintiffs, having furnished supplies for the vessel, which was then ply- ing between New York and Monmouth, New Jersey, issued a warrant of attachment against said steamboat, under the act aforesaid. The sheriff seized her, and made his return of the seizure. The owners obtained an order to show cause why the attachment should not be vacated, on the ground that the State courts had no jurisdiction to enforce a lien based upon claims of that character; that such power was vested exclu- sively in the courts of the United States having admiralty jurisdiction. The judge at Special Term made an order vacating the warrant, on the ground mentioned. Upon an appeal to the General Term of the first district, this order was reversed. The owners thereupon appealed to the Court of Appeals, where the order of the General Term was reversed, and that of the Special Term affirmed, upon the ground there taken. The head-note in the 39th New York gives the result in these words: " A proceeding against a steamer, by name, authorized by the Laws of 1862, chapter 482, is a proceeding in the nature and with all the incidents of a suit in admiralty. The District Courts of the United States are, by the Consti- tution and laws thereof, vested with exclusive original cogni- zance in all cases involving admiralty and maritime jurisdic- tion. State laws conferring jurisdiction in such cases upon State courts are in conflict with the Constitution and laws of the United States, and void."

The respondents argue that the present case is to be distin- guished from that of *The Josephine,* in these respects:

1st. The proceeding in the case of *The Josephine* was not on the bond, but was an attachment *in rem.* This is true. That the fact will alter the result is not, however, apparent. In each case an attachment was issued against a vessel in a domestic port, for supplies furnished to the vessel in that port, and was levied upon the vessel. The same basis of jurisdic- tion was claimed, under similar statutes, and upon an identical state of facts. In the one case the question was met at its first stage, on a motion to vacate the attachment. In the

other, it is raised as a defence to the bond given to vacate the attachment. If the attachment was void and of no effect, a bond given to enforce it or to discharge it is also void. The owner of the vessel had the right to its possession, free of the incumbrance of the attachment. The bond was obtained by duress and illegal compulsion.

2d. It is said that the decision in the Josephine, referred to the act of 1862, while the act in this case, was a part of the Revised Statutes. The warrant of attachment against the brig Jachin, was issued on the first day of July, 1859. The brig was at once levied on, and on the second day of the same month, the bond in question was given to procure her release. By the act of March 30th, 1859, to take effect on that day, the Revised Statutes, on this subject, had been altered in many respects, and the provisions of the act of 1859, to a great extent, substituted in their place. (*Laws* 1859 *ch.* 79, *p.* 228.) There is quite a difference in the details of the act of 1859, and those of 1862, but none whatever in the principles and main features of the two acts. The difference consists mainly in the extension of the act of 1862, to more numerous cases, and the omission of many exceptions. Both acts provide that whenever debts, amounting to fifty dollars on sea-going vessels shall be contracted by the master of any ship or vessel, on account of such a service done, materials, supplies or articles furnished within this State, or for such provisions or stores furnished within this State as may be fit and proper for the use of such vessel, the same shall be a lien upon the ship and vessel. It is further provided, in each of said acts, that the lien shall cease, unless within a given time, specifications of the lien shall be filed in the county clerk's office. In each of the said acts, provision is made for the issuing of a warrant of attachment and the discharge thereof, by giving a bond for the payment of the amount that shall thereafter be ascertained to be due, for the cause alleged. On the question of the conflict of jurisdiction, whether these statutes are an interference with the exclusive admiralty jurisdiction of the United States courts, the two Statutes are the same. If the Statute of 1862

is void for this reason, no degree of ingenuity can rescue the Statute of 1859 from the same condemnation. (See Laws 1862, ch. 482, p. 956; Laws 1859, ch. 79, p. 228.)

The respondents urge, in the third place, that the Revised Statutes on this subject, have been repeatedly before the court, and judgments on bonds given under it, have been repeatedly affirmed. The cases cited by the respondents' counsel fully sustain this assertion. It is undoubtedly true. I have examined all the cases referred to, and find that in none of them was the question before us raised. The question arose upon the construction of the Statute, assuming its validity. In none of them is the point in question alluded to, in the most remote manner. Any number of such authorities would not justify the overruling of an express and deliberate decision of the Court of Appeals, where the precise question was distinctly presented for their adjudication.

It is said further, that this court should not adhere to the decision in the Josephine, inasmuch as a different doctrine has been since held in the United States Court. To this point the *Belfast* is cited (7 Wallace, 624). The judge delivering the opinion in that case, makes suggestions which may be taken as favoring to some extent the respondents' view. The point of the decision was that the law of Alabama, creating the lien on the Belfast, was unconstitutional. There is nothing in the case overruling the previous decision of that court on the point before us. We should not be justified on this authority in overthrowing or in weakening the decision as recently made in the highest court of this State.

It is urged, also, that although the attachment proceeding is void, the bond is voluntary; that if a man chooses to give such a bond he shall be bound by it. Such is not the law. The bond is not voluntary. It is *in invitum*, compulsory, given to obtain a release of his property. If the attachment is void, the bond falls with it. (*Homan* v *Brinckerhoff*, 1 Den., 184.)

In that case Brinckerhoff had sued out an attachment in a justice's court against one Davis, without giving the proper

bond, and had levied it upon the property of the plaintiff Homan. To obtain the release of the property, Homan gave the bond provided for by the statute. The justice gave judgment in favor of the plaintiff in the original suit. The plaintiff then brought suit against Brinckerhoff upon the bond thus given by him, and recovered before the justice. Brinckerhoff insisted that the attachment not having been authorized by law was void, and that the bond given to procure its discharge was also void. The Supreme Court say that, by the appearance of Davis before the justice, jurisdiction in the attachment suit was obtained, and the judgment rendered in that suit was valid. But it is added, "that will not aid the plaintiff; he did not hold the property under the judgment. * * Although the plaintiff had got a valid judgment, he had no other hold upon the property than such as the attachment gave him, and that, as we have seen, was utterly void for want of jurisdiction to issue it." The judgment in favor of Brinckerhoff was therefore reversed. This case is a precise and pointed answer to the argument, that the plaintiff waived or lost the right to object to the want of jurisdiction by giving the bond to obtain a release of his property.

In the matter of *Faulkner* (4 Hill, 598), the same principle was decided. An attachment was issued against Faulkner as an absconding or concealed debtor. He afterward presented a petition stating that he was not such a debtor, and had a reference to the New York Common Pleas, where the matter was decided against him. Afterwards trustees were appointed, and a report was made to the Supreme Court. Faulkner then moved, on special grounds, to set aside the appointment of trustees, which was denied. After all this, the debtor moved to set aside the attachment and all subsequent proceedings for want of jurisdiction. It was objected, among other things, that by his motions and proceedings, he had waived the point of jurisdiction and was not now at liberty to claim it. This objection was overruled, BRONSON, J., saying; "But this was not a proceeding *in personam*, where a voluntary appearance

would be sufficient to confer jurisdiction on the person, though not regularly served with process. It was a proceeding *in rem*, and the debtor only came in to save his property. He undertook to prove that he was not an absconding or concealed debtor, for the purpose of having the warrant discharged. But I do not see how that could confer jurisdiction on the judge who had previously issued the warrant." (Page 601.) I do not think he would have been able to see how the giving a bond to obtain a discharge of the vessel here, could confer jurisdiction on the judge who had previously issued the warrant.

It is argued further that, by not raising the question of jurisdiction at the trial and there asking a ruling upon it, the defendant has lost his right to raise it now.

Reducing the case to its original questions, the matter stands thus: In a suit upon this bond, if the defendant had desired to contest it, and had interposed the defence he now seeks the benefit of, what would have been its form?

Under the case of *Homan* v. *Brinckerhoff*, *supra*, his answer would have been that the bond was obtained by duress; that he was compelled to give it to obtain a restoration of his property; that that compulsion was under an illegal assumption of authority, and that the bond was void. In the case of *Homan* v. *Brinckerhoff* the defendant did so allege and prove, and his defence was sustained. In the case before us the record contains no such allegation. No such suggestion was made at the trial, nor was there even a motion for a nonsuit on the general ground that the facts proved did not constitute a cause of action. In short, it nowhere appears that the attention of the court below was called to the point or that they were asked to rule upon the question, or upon any point which by the most liberal construction can be held to embrace it. There is no decision for us to review, and reviewing decisions of the courts below is the sole and exclusive duty of this court.

In a criminal case the interests of society are involved, and jurisdictional questions cannot be waived. Thus in *Cancemi's* case (18 N. Y. R., 128), where there was an express stipula-

tion of the prisoner's counsel that the trial might proceed with eleven jurors, and a verdict of guilty was rendered, the Court of Appeals set aside the verdict. A man may not stipulate that he may be hung in certain contingencies or upon the proof of certain facts. He cannot dispose of his life by arbitration. If his life is taken, except upon proof of the facts constituting the crime of murder, and before a tribunal qualified by law to determine the question, it is murder.

That case, however, makes the distinction between criminal and civil cases. In the latter class of cases it is said that the party may stipulate away all his rights, questions of jurisdiction, as well as others. As in other cases, they may do this by express stipulation, by failure to appear, or by an omission to present the proper points, or by acts inconsistent with that objection. Thus the Constitution secures the right of trial by jury in the cases in which it has been heretofore used. A party may, however, waive this right and proceed by reference. (*Lee* v. *Tillotson*, 24 Wend., 337.) So where the creditors of an insurance company received dividends under an assignment, which was unconstitutional and illegal as to them, but which cut off the claim against stockholders of those creditors in regard to whom it was legal, it was held that by receiving dividends under the unconstitutional assignment they were estopped to allege its unconstitutionality, and could not enforce their claims against the stockholders. (*Van Hook* v. *Whitlock*, 26 Wend 43.) So where persons were authorized to build a dam across a river, provided they should execute a bond conditioned to pay such damages as each person might sustain in consequence thereof, and that any person might apply to a county judge for the appointment of a justice of the peace to ascertain his damages, etc., it was held among other things, that by accepting the grant the builders had waived the objection that the proceedings were not according to the course of the common law, and that they had thereby waived the right of trial by jury. (*People* v. *Murray*, 5 Hill., 468.) So again, a constitutional provision which authorizes the corporation of the city of New

York to appropriate the whole of a lot, where only part of it is required for public use, is unconstitutional. But where the proceedings are taken with the consent of the owner, express or implied, and where the damages under the award are received by him, he is held to have renounced the benefit of the constitutional provision, and a good title is obtained under such authority. (*Embury* v. *Conner*, 3 Comst., 511.)

Under these authorities it is clear that the unconstitutionality of the act, under which the bond was given, was capable of being waived by the obligor. By failing to raise it or to present it in any form for the consideration of the court below, he waived it as effectually as he could have done by express stipulation. There is no proceeding known, in a civil case, by which questions can be presented for review in the Court of Appeals, which have not been presented to the court below and there decided, although the facts upon which it might have been presented sufficiently appear. (*Lake* v. *Gibson*, 2 Comst., 188; *Gridley* v. *Daggett*, 6 How, Pr. R., 280; *Perkins* v. *Farnham*, 10 Ib., 120; *Oldfield* v. *N. Y. and H. R. R.*, 4 Kern., 310; *Codd* v. *Rathbone*, 19 N. Y., 37; *Morris* v. *Husson*, 4 Seld., 204.)

Judgment should be affirmed with costs.

EARL, C. It is provided by the Revised Statutes (part 3, chap. 8, title 8, as amended by chap. 79 of the Laws of 1859), that whenever a debt amounting to fifty dollars, on sea-going or ocean-bound vessels, shall be contracted by the master, owner, agent or consignees of any vessel, for such provisions and stores, furnished within this State, as may be fit and proper for the use of such vessel, such debt shall be a lien upon said vessel, which lien shall have a preference over certain other liens mentioned; and it is further provided that such lien may be enforced by a summary proceeding *in rem*, by a warrant of attachment issued to the sheriff by any judge or justice of any court of record. It is also provided that, after the warrant has been issued, the owner, agent, or any person interested in the vessel may apply to the officer who

issued the warrant for an order to discharge the same; and, upon the execution and delivery to such officer of a bond to the creditors prosecuting such warrant, conditioned that the obligors will pay the amount of all such claims and demands as shall have been exhibited, which shall be established to have been subsisting liens upon such vessel, pursuant to the provisions of said title, such officer shall make an order discharging said warrant; and thereafter the remedy of the attaching creditors is upon the bond.

The warrant of attachment mentioned in the complaint was issued, and the bond sued upon was given, under these provisions of the Revised Statutes.

In 1862 (Laws of that year, chap. 482) an act was passed entitled "An act to provide for the collection of demands against ships and vessels," which took the place of, and repealed the said provisions of the Revised Statutes, and all acts amendatory thereof. That act came in question in the case of the steamboat Josephine (39 N. Y., 19), and was held to be void, as in conflict with the Constitution and laws of the United States. The second section of the third article of the Constitution of the United States, among other things, declares that the judicial power of the United States shall extend to all cases of admiralty and maritime jurisdiction. The ninth section of the act of Congress passed September 24, 1789, commonly called the judiciary act, declares that the District Courts of the United States shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it. (1 U. S. Stat. at Large, 77.)

In the case in 39 New York, the claim was for supplies furnished to the steamer Josephine, a domestic vessel, in her home port; and, while the court held that, according to the general maritime law, there was no lien upon this vessel for these supplies which could be enforced *in rem* in a court of admiralty, because the vessel was a domestic vessel and the supplies were furnished in her home port, yet it held that the

contract for the supplies was a maritime contract, within the maritime law as recognized by the courts of the United States, and that the vendors could enforce it in a suit *in personam* in a court of admiralty; and, hence, that it was a case, under the Constitution and laws of the United States, within the exclusive jurisdiction of the District Courts of the United States, except that the vendors might avail themselves of any common-law remedy which they might have in a State court. The proceeding *in rem*, provided for in the law of 1862, was held not to be a common-law remedy, and hence not within the saving clause of the act of Congress; and the conclusion was thus reached, that the law was unconstitutional and void.

So far as the constitutional question is involved, there is no difference between the provisions of the Revised Statutes as amended in 1859 and the law of 1862. The former, like the latter, provides for a lien and its enforcement, not by a common law remedy, but by a special summary proceeding by warrant of attachment *in rem*, and under that decision I can entertain no doubt that the said provisions are unconstitutional and void.

But it does not follow from this that the plaintiffs must be defeated in their action upon the bond. The bond took the place of the lien, and, instead of the lien, the plaintiffs then had a common law remedy *in personam* upon the bond and could bring themselves within the saving clause of the act of congress.

When the defendants gave the bond they made no objection that the law under which the vessel had been attached was invalid. The bond refers to the law, and impliedly at least recognizes its validity. By it the defendants bound themselves to pay all such claims and demands as should be established to have been subsisting liens upon the vessel, pursuant to the provisions of the title of the Revised Statutes referred to. In the complaint in this action the law under which the vessel was seized was referred to, and the proceedings under

it were recited; yet the defendants, in their answer, made no objection that the law was invalid, but seemed to place their defence upon the grounds that the law had not been complied with, and that the supplies were furnished upon the sole credit of Lovejoy, the master, and that therefore the plaintiffs had no lien upon the vessel under the statute. Upon the trial the plaintiffs read in evidence a stipulation, signed by the attorney for the defendants, making certain admissions in which the validity of the law is substantially recognized. It was admitted that the specifications required by the law to be sworn to were duly sworn to and filed "according to the statute in such case made;" that the plaintiffs made application "for a warrant to enforce their alleged lien, in pursuance of the Revised Statutes (article 8, chap. 8, part 3), as set forth in the complaint;" that defendants gave the bond "pursuant to said statute;" that "the forms of the statute were complied with." But the stipulation specified that the defendants did not admit that the plaintiff had any lien upon the said vessel, or that the articles furnished were such as were contemplated and referred to by the statute. There was no question whatever at the trial as to the validity of the law or of the bond, and the only defences relied upon by the defendants were that the supplies were furnished upon the sole credit of Lovejoy, and not upon the credit of the vessel or her owner, and that the supplies were not fit and proper for the use of the vessel. And judging from the opinions given at the General Term, I infer that the objection to the validity of the law was not made there. I am of the opinion, therefore, that the defendants are too late, after all that had taken place, to make this objection in this court for the first time. They must be held to have waived it. It will not be questioned that a party may, in any civil proceeding, waive the benefit or protection of any statutory or constitutional provision. They bound themselves to pay this claim, if it should be established to have been a lien upon the vessel according to the statute, and all the plaintiffs were bound to prove, to entitle them to recover, was that this claim was such a lien at

the time when the bond was given. The defendants were in substantially the same position that they would have been, if they had bound themselves to pay this claim upon condition that the plaintiffs should prove that the owner of the vessel was legally liable to pay it, or upon any other condition which was not illegal, immoral or against public policy. But, further, how can it be claimed that this defence could be available without being set up in any way in the answer? The answer does not deny the execution of the bond nor claim that it was invalid, but simply takes issue substantially upon the breach of the condition of the bond. It would be quite extraordinary if, under our system of pleading, with such an answer, the defendants were permitted to show, as a defence, that the bond was given in proceedings prescribed by a statute which was unconstitutional and void. In the cases of *Homan* v. *Brinckerhoff* (1 Denio, 184), and *Cadwell* v. *Colgate* (7 Barb., 253), the validity of the attachment proceedings and the bond were put in issue in the pleadings, and the attachment proceedings and the bond in each case were claimed upon the trial to be invalid and void, and hence those cases furnish no authority against the plaintiffs upon this appeal.

I am, therefore, of the opinion, for the reasons given, that the defence here alluded to, cannot prevail, and I will briefly examine the other grounds of error urged by the counsel for the appellants.

There was some evidence that this vessel was a sea-going vessel, and no claim to the contrary was made in the answer or upon the trial. There was evidence that the articles furnished were fit and proper for the use of the vessel. The master ordered the supplies, and testified that they were necessary. It is a general rule that the master is to determine what supplies are fit and proper, and the vendors, acting in good faith, can rely upon his decision. (*Ford* v. *Crocker*, 48 Barb., 142.) This is so, for the reason that the vendors cannot generally know what supplies are needed for the vessel, and they must rely upon the statements of the master.

It was sufficient for the plaintiffs to show that the supplies were furnished upon the order of the master of the vessel, and this, according to the terms of the statute, gave them a lien upon the vessel. It made no difference who owned, chartered or controlled the vessel, nor under what agreement she was navigated. The statute was intended to give the vendors of supplies the lien, whenever the master ordered them. (*Pendleton* v. *Franklin,* 7 *N. Y.,* 508.) In order to establish their lien, it was not necessary for the plaintiffs to show that the supplies were furnished under such circumstances as to make the owners personally liable for them. The statute does not require this. The vendors could waive their lien or furnish the supplies, with an understanding that they were to have no lien, and were to look exclusively to the credit of the master, or some other person, but there was no conclusive proof here, that these supplies were furnished under such circumstances.

But here the owner was personally liable for these supplies, notwithstanding the agreement between him and the master, dated May 24th, 1858. There was no finding or positive proof that the plaintiffs knew of this agreement or of the arrangement under which the vessel was navigated by the master. In order to exempt the owners from personal liability in such a case, the master must *pro hac vice* be the owner, and in the control and management, for the time being, of the vessel as owner. Here, the vessel was not chartered to the master, but he was bound to navigate her for the owner. The owner could direct how and with what the vessel should be freighted, and when and where she should sail, and could continue or dismiss the master, as he thought proper. By the express terms of the agreement, the master was to have the one-half of the gross amount of freight earned as wages, and to re-imburse him for his expenditures. Under such circumstances it has been held, in cases quite analagous, that the relation of principal and agent existed between them, and that the owner was liable for the acts and contracts of the master, in and about the supplies and management of the

vessel. (*Saxton* v. *Read,* Lalor's *Sup.* 323 ; *Kenzel* v. *Kerk,* 32 Howard P. R., 269.)

I, therefore, reach the conclusion, that the judgment should be affirmed with costs.

All for affirmance except LEONARD, C., not sitting.

Judgment affirmed.