## SUPREME COURT.

The People of the State of New York agt. The Globe Mutual Life Insurance Company.

*Insolvent Life Insurance Company — Chapter. 902, Laws 1869, as amended by Laws of 1880 — Practice on motion to confirm actuary's report — Power of the court over actuary's report.*

Where on a motion on the part of the receiver of an insolvent insurance company to confirm the actuary's report upon the condition of such company, it is objected that the act of 1869, under which the order appointing the receiver was made is no longer in force, but was repealed or suspended by chapter 161 of the Laws of 1879:

*Held*, that the act of 1869, which provides for the deposit of securities with the superintendent of insurance for the benefit of registered policies and for their oversight and supervision is in no wise changed, altered or affected by the act of 1879.

It is further objected that the order appointing the receiver was unauthorized, because preliminary to the action being taken by the attorney-gen-

The People agt. Globe Mutual Life Insurance Company.

eral, there was no report to that officer by the superintendent of insurance that the defendant was "in such a condition as to render the issuing of additional policies and annuity bonds by said company, injurious to the public interests:"

*Held*, that the manner of the making of such a report, whether it should be oral or written, is not prescribed, nor is it made necessary by the act, that the fact that such a report had been made should be stated to the court. There would seem to be no good reason to require it to be so stated, for after the proceeding is brought, the court must satisfy itself " by the allegations and proofs of the respective parties * * * that the assets and funds of said company are not sufficient to justify the further continuance of the business of insuring lives, granting annuities and incurring new obligations, as authorized by its charter," before it can "issue an order enjoining and restraining the said company from further prosecution of its business, and * * * appoint a receiver of all the assets and credits of said company."

*Held, second,* that conceding the necessity of a report from the superintendent of insurance, the statute was in substance complied with. The only possible object of this provision in regard to the action by the superintendent of insurance was that the judgment of that officer should concur in the need of the proceeding, and if he does so concur, there would seem to be no good reason to require it in advance of action by the attorney-general, and that, therefore, the report made before the order appointing a receiver was sufficient.

*Held, third,* that this and every other objection should have been made upon the application, or at least to the order when it was resettled and re-entered. Instead of objecting the defendant expressly consented and affirmatively asked that the order which was made should be made, and upon *its resettlement all its provisions were made to conform to* the criticisms and wishes of the defendant. Under such circumstances it cannot now object to the validity of the order, for both statute and constitutional rights may be waived by a party and by a corporation, when it is a party, as well as by a natural person.

It is also objected that the actuary's report should be sent back because such actuary has not taken into account in making his report the future premiums to be received by the company upon its policies, as required by section 8 of the act of 1869:

*Held, first,* that while the report does not show a detailed valuation of such future premiums, it does not appear that they were not considered in reaching the conclusion of insolvency, for such report does most clearly exhibit all the resources of the defendant and all its liabilities, and states that the latter are in excess of the former $559,271, and that " it is clearly impossible for the company to resume business." With such a result before him and the court, any detailed calculations of

future premiums became unnecessary to enable either to decide that the company's assets could not meet its obligations as they matured.

*Held, second,* that prior to the amendment of the act of 1869, by the act of May 5, 1880, all the special term could then do was to send the report back to the actuary for correction; the statute gave the court no power to reject it. While it is true that the act of 1869, as amended by that of May 5, 1880, now requires the actuary's report to be confirmed by the court, whether the same is favorable or unfavorable as to the solvency of the company, yet the propriety of rejecting the actuary's report and thus practically keeping the company in life through a receiver must be considered.

*Held,* also, that the opinion of the general term in *People* agt. *Atlantic Mutual Life Insurance Company* (15 *Hun,* 84), and of the court of appeals in same case (77 *N. Y.,* 336), are directly applicable, and that the report of the actuary should be confirmed and an order entered directing the conversion of the defendant's assets into money pursuant to section 8 of chapter 902 of the Laws of 1869, as amended by section 1 of the act of May 5, 1880.

*Ulster Special Term, March,* 1880.

MOTION on the part of the receiver and the attorney-general to confirm the actuary's report upon the condition of the defendant.

*Messrs. Willard Bartlett* and *Henry J. Cullen, Jr.,* for receiver.

*S. W. Knevals,* for attorney-general.

*Hamilton Harris,* for superintendent of insurance.

*Charles D. Lewis,* for defendant.

*Messrs. Barnes, Van Wyck* and *McAdam,* for policy-holders.

WESTBROOK, *J.* — The proceeding in this action was by summons and complaint by the attorney-general, in which the people were named as plaintiffs and The Globe Mutual Life Insurance Company was defendant, leave to bring such action having first been granted by a judge of this court.

The complaint alleges the insolvency of the defendant, and the need of the appointment of a receiver to take care of its assets, and to distribute the same, and that the board of trustees of the defendant, after a full and complete investigation of its affairs had unanimously requested the attorney-general to bring such action, to obtain the appointment of a receiver thereof, and to wind up its business and distribute its assets.

On the 28th day of May, 1879, an order to show cause was granted by a judge of this court, returnable on the next day at a special term thereof, to be held at the City Hall, in the city of Albany, why the injunction prohibiting the doing of business by the defendant, its officers and agents, which was incorporated in the order to show cause, should not be continued " and why a receiver of the property and effects of the said corporation should not be appointed, pursuant to the provisions of the Revised Statutes and laws of this state, with all the powers and authority conferred upon receivers in such cases, and for such other and further relief as may be just."

On the return day of the order, the defendant appeared by Mr. William Allen Butler, one of its then attorneys and its counsel, the people by its then attorney-general (Hon. A. Schoonmaker), the superintendent of insurance by Mr. Hamilton Harris, and sundry policy-holders by Messrs. Hale and Knox.

Upon the application of the receiver the attorney-general presented a careful and exhaustive report of a committee of the board of trustees of the defendant, dated the 26th day of May, 1879, verified by their affidavit, by which it was most abundantly demonstrated that the corporation was hopelessly and irretrievably insolvent, and also a unanimous resolution of such board of trustees, adopted on the same day that the above report was made to them, asking the attorney-general to take the action and proceedings which he had then initiated, and was then pressing.

The defendant, by its then counsel, Mr. Butler, united with

the attorney-general in his application, and vigorously opposed any delay in the proceeding, and strenuously and forcibly argued that the situation and condition of the company required prompt action by the court.

The then superintendent of insurance (Hon. John F. Smyth) appeared upon the motion, and by his counsel (Hon. Hamilton Harris), concurred in the necessity of the appointment of a receiver, and subsequently, and before the making or entry of any order upon such application, filed with the court, addressed to it and to the attorney-general, a written report recommending and advising the proceeding and application, and the appointment of a receiver.

Some policy-holders appeared also by Messrs. Hale and Knox, who asked for delay in the appointment of a receiver, They were heard, as they were not then parties to the proceeding or the action, by courtesy, but their request for delay was strenuously resisted by both the attorney-general and the counsel for the defendant, and was denied by the court.

The original order appointing Mr. James D. Fish, receiver, was filed and entered in the Albany county clerk's office on the 10th day of June, 1879. To its form and verbiage some objections were made by the attorney-general and the counsel for the defendant, and the same was resettled, and re-entered on the 17th day of June, 1879. Upon such settlement all parties were represented by counsel, and that order is now in the form and language desired and consented to by both the representative of the people and the representative of the defendant.

A reference to that order will show that the receivership was not designed to be a temporary one pending further litigation, but final and for the purpose of distributing the effects and property of the defendant. It recites fully the proceedings which have been herein detailed, among which are the appearance of the superintendent of insurance and his consent to and concurrence in the proceeding, both through counsel in open court, and his written report filed with the court, and

the proofs presented, and then declares, " due deliberation
being had in the premises, *and no objections having been taken
to the form or mode of procedure*, and after hearing the allega-
tions and proofs of the respective parties, and it appearing to
the satisfaction of the court that the said defendant is insol-
vent, and that the assets and funds of said company are not
sufficient to justify the further continuance of the business of
insuring lives, granting and issuing new obligations as author-
ized by its charter, and that the relief asked for in the order
to show cause should be granted, it is ordered that the relief
asked for in said order be, and the same is hereby granted ;
and it is further ordered that the said motion for an injunction
and receiver be, and the same is hereby granted." The order
then contains the usual injunction clause against the defend-
ant, its officers and agents, and says : " It is further ordered,
pursuant to the statutes in that case made and provided, that
James D. Fish, of New York city, be, and he hereby is
appointed receiver of the goods, chattels, property and effects,
and of all the assets and credits of said company, the defend-
ant, The Globe Mutual Life Insurance Company, to take
charge of and manage the affairs of said corporation, its
property and effects, *and under the order and direction of
this court to distribute its assets according to law*, and for that
purpose he is authorized to collect, sue for, and receive the
debts and demands that may be due and owing, or which may
hereafter fall due, and the property of every name, kind and
nature that may legally or equitably belong to said corpora-
tion, subject to such further or other order in the premises as
may hereafter be made by the court, and that as such receiver
he be, and is vested with, and is entitled to all the estate,
real and personal property, assets, credits and effects of the
said The Globe Mutual Life Insurance Company, and shall
possess all the power and authority conferred upon receivers
according to law."

There are also various other clauses in the order requiring
a bond to be given, and defining and prescribing the mode of

executing the trust, all of which show with equal clearness, that the trust to which the receiver was appointed, and the order made were in pursuance of chapter 902 of the laws of 1869.

The receiver, after the entry of such order, appointed, with the approval of the superintendent of insurance, Frederick J. Phillips, actuary, to investigate and report to the court and receiver upon the condition of the defendant as required by section seven of said act of 1869. This appointment, though it must have been known to the officers and attorneys of the defendant, was not questioned, and the actuary proceeded for months, without objection by motion to the court, in the discharge of his duties.

The report of such actuary has been presented to the court, and from it it appears that the defendant's liabilities are largely in excess of its assets, and that it is unable to meet its engagements as they mature. To the confirmation of that report by the court, or the taking of any action thereon, the company now object for reasons, which will be examined.

*First.* It is objected that the act of 1869 under which the order appointing the receiver is claimed to have been made, is no longer in force, but was repealed or suspended by chapter 161 of the Laws of 1879.

It will be seen, on reference thereto, that chapter 161 of the Laws of 1879 does not affect chapter 902 of the Laws of 1869. The act of 1879 is simply amendatory of chapter 463 of the Laws of 1853. That appears from its title, and from its provisions which simply amend the title of the act of 1853, and also section 17 thereof. The act of 1869, which provides for the deposit of securities with the superintendent of insurance for the benefit of registered policies, and for their oversight and supervision is in no wise changed, altered or affected by the act of 1879. The correctness of this view is made apparent by the fact that chapter 168 of the Laws of 1880 recognizes the act of 1869 as still in force, by amending the eighth section thereof.

*Second.* It is said that the order appointing the receiver was unauthorized because preliminary to the action being taken by the attorney-general, there was no report to that officer by the superintendent of insurance, that the defendant was "in such a condition as to render the issuing of additional policies and annuity bonds by said company, injurious to the public interests." To this objection several answers can be given.

1st. How does it appear there was no such report? The manner of the making thereof, whether it should be oral or written, is not prescribed, nor is it made necessary by the act, that the fact that such a report had been made should be stated to the court. There would seem to be no good reason to require it to be so stated, for, after the proceeding is brought, the court must satisfy itself " by the allegations and proofs of the respective parties   *   *   *   that the assets and funds of said company are not sufficient to justify the further continuance of the business of insuring lives, granting annuities and incurring new obligations, as authorized by its charter," before it can " issue an order enjoining and restraining the said company from the further prosecution of its business and   *   *   *   appoint a receiver of all the assets and credits of said company " (*Section 7 of chapter 902, Laws of 1869*).

2d. Conceding the necessity of a report from the superintendent of insurance the statute was in substance complied with. The only possible object of this provision in regard to the action by the superintendent of insurance was that the judgment of that officer should concur in the need of the proceeding, and if he does so concur, there would seem to be no good reason to require it in advance of action by the attorney-general, and that, therefore, the report made before the order appointing a receiver was sufficient.

3d. But this, and every other objection, should have been made upon the application, or at least to the order when it was resettled and re-entered. Instead of objecting, the defend-

ant expressly consented, and affirmatively asked that the order which was made should be made, and upon its resettlement all its provisions were made to conform to the criticisms and wishes of the defendant. Under such circumstances it cannot now object to the validity of the order, for both statute and constitutional rights may be waived by a party, and by a corporation when it is a party, as well as by a natural person (*The People* agt. *Brennan*, 3 *Hun*, 666 ; *Vose* agt. *Cockcroft*, 44 *N. Y.*, 415 ; *Houston* agt. *Wheeler*, 52 *N. Y.*, 641 ; *Baird* agt. *New York*, 74 *N. Y.*, 382 ; *The Attorney-General* agt. *Guar. Mut. Life Ins. Co.*, 77 *N. Y.*, 372). This point disposes of every objection as to the form and manner of procedure. It may not be improper, however, to add that the act of 1869 does not prescribe the mode of procedure by the attorney-general, whether it should be by action or petition,. or whether it might not be a motion in a statute action to dissolve the corporation as a *quasi* interlocutory proceeding therein. Very clearly, however, by the service of a summons and complaint upon the defendant, the court obtained jurisdiction of its person, and of the subject-matter of the action the laws of this state gave it full cognizance. If any question of procedure was to be made, it was to be made on the original application, or at least upon the resettlement and re-entry of the order. With an order entered by consent more than a year ago, unappealed from. and unvacated, the defendant is in no position to object to its validity.

*Third.* It is also objected that the actuary's report should be sent back because such actuary has not taken into account, in making his report, the future premiums to be received by the company upon its policies, as required by section 8 of the act of 1869.

To this it may be answered : 1st. That while the report does not show a detailed valuation of such future premiums, it does not appear that they were not considered in reaching the conclusion of insolvency, for such report does most clearly exhibit all the resources of the defendant, and all its liabilities,.

and states that the latter are in excess of the former $559,271, and that "it is clearly impossible for the company to resume business." With such a result before him and the court, any detailed calculations of future premiums became unnecessary to enable either to decide that the company's assets could not meet its obligations as they matured; and 2d. Prior to the amendment of the act of 1869 by the act of May 5, 1880, the precise question had been passed upon by this court, both at special (*Matter of Atlantic Mutual Life Insurance Company*, 55 *Howard*, 77 *and* 82; 56 *Howard*, 391) and general term (*Same Case*, 15 *Hun*, 84), and also by the court of appeals (*Same Case*, 77 *N. Y.*, 336). It was held by all these courts, that all the special term could then do was to send the report back to the actuary for correction, and that the statute gave the court no power to reject it. While it is true that the act of 1869, as amended by that of May 5, 1880, now requires the actuary's report to be confirmed by the court, whether the same is favorable or unfavorable as to the solvency of the company, yet the propriety of rejecting the actuary's report and thus practically keeping the company in life through a receiver, must be considered. The opinion of this court at general term in *People* agt. *Atlantic Mutual Life Insurance Company* (15 *Hun*, 84), and of the court of appeals in *Same Case* (77 *N. Y.*, 336; *see pages* 340, 341), are directly applicable. When to the facts in the case referred to, we add those which this proceeding presents, that the company itself, by its entire board of trustees, admitted its hopeless insolvency, and fortified that opinion by a very formal and detailed report of a committee of its board verified by oath, and by counsel not only consented to a receiver, but urged upon the court the need of such an appointment without delay, it is very apparent that if this court should, by any act or order it might make, continue the company or its policies in life, the "*freezing* out the policy-holders," to which the general term of this court in the case referred to alludes, would be complete and perfect. For surely no holder of a policy of life insur-

ance would pay a single dollar to continue it in force, and but a small proportion of the insured could pay the accumulation of premiums accrued during the pendency of these proceedings, if they desired so to do. Such an order, if made, would be practically one distributing the assets among the stockholders, and canceling all outstanding insurance obligations of the corporation.

The clear result of my examination is, that the report of the actuary should be confirmed, and an order entered directing the conversion of the defendant's assets into money, pursuant to section 8 of chapter 902 of the Laws of 1869, as amended by section 1 of the act of May 5, 1880.