(61 Misc. Rep. 445.)

### PATTI v. UNITED SURETY CO.

(City Court of New York, Trial Term. December, 1908.)

**1. CONSTITUTIONAL LAW (§ 240*)—EQUAL PROTECTION OF THE LAWS.**

Laws 1907, p. 263, c. 185, requiring corporations and persons engaged in selling steamship or railroad tickets to or from foreign countries, who, in connection therewith, receive money to be transmitted to foreign countries, to give a bond, is, because of the exemption, by section 6, of transatlantic steamship companies and certain others from the operation of the act, in violation of the equal protection of the laws guaranteed by the Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 688; Dec. Dig. § 240.*]

**2. CONSTITUTIONAL LAW (§ 42*)—PERSONS ENTITLED TO RAISE QUESTION OF CONSTITUTIONALITY.**

A surety company executing a bond under Laws 1907, p. 263, c. 185, requiring corporations and persons receiving money to be transmitted to a foreign country to execute a bond for the faithful transmission thereof, cannot, when sued on the bond, attack the constitutionality of the act upon the ground that it denies the equal protection of the laws because of the exemption by section 6 of transatlantic steamship companies and certain others from the operation of the act, for it is not one of the corporations or persons required to give the bond, and cannot be considered as discriminated against or affected by the act.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 39; Dec. Dig. § 42.*]

**3. CONSTITUTIONAL LAW (§ 43*)—RIGHT TO RAISE QUESTION OF CONSTITUTIONALITY—WAIVER.**

A surety voluntarily executing a bond under Laws 1907, p. 263, c. 185, requiring corporations and persons receiving deposits of money to be transmitted to a foreign country to give a bond for faithful transmission, and accepting the benefits of the act, thereby waives the right to attack the constitutionality of the act, when sued on the bond, upon the ground that it denies the equal protection of the laws, because by section 6 it exempts transatlantic steamship companies and certain others from its operation.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 41; Dec. Dig. § 43.*]

Action by Guiseppe Patti against the United Surety Company. Demurrer to second paragraph of the answer sustained.

Achille J. Oishei, for demurrer.
Blumenstiel & Blumenstiel, opposed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GREEN, J.  This action is brought by the plaintiff against the defendant, a surety company, upon a bond given by the said defendant as surety for one Antonio Crisafi, who conducted a steamship ticket agency in the city of New York.  The action is brought to recover damages sustained by the plaintiff by reason of his having deposited certain money with Antonio Crisafi for transmission to foreign countries, and which he failed to do.  The defendant gave a bond as surety for said Antonio Crisafi in the sum of $15,000 to the people of the state of New York, conditioned that Antonio Crisafi should faithfully and diligently hold and transmit any and all moneys or the equivalent thereof which should be delivered to him for transmission to foreign countries.  The law requiring Antonio Crisafi to give such a bond was chapter 185, p. 263, Laws 1907, and that act provided that an action might be brought upon said bond by any person aggrieved.  The defendant answered the complaint, and alleged that the law under which the bond was executed and delivered is unconstitutional, and thus rendering the said bond void and of no effect.  The answer also alleged two separate defenses:  First, that the plaintiff's complaint does not state facts sufficient to constitute a cause of action; and, second, that the bond is void by reason of the unconstitutionality of the statute in question which provided for the bond.  The plaintiff demurred to the separate defenses and to the new matter alleged in paragraph 2 of the answer on the ground that they are insufficient in law upon the face thereof, and the questions are now presented, arising upon the demurrer, as to the sufficiency of the answer, the sufficiency of the complaint, the constitutionality of the act under which the bond was given, and also the right of the defendant to set up the unconstitutionality of the act as a bar to the action upon the bond.  About the same time that these questions were presented to this court for its consideration similar questions as involved upon this demurrer were presented to one of the learned justices of the Supreme Court.  The pleadings, counsel, and questions of law were identical with the case at bar, and the only difference was that the plaintiffs in the Supreme Court action were assignees of a number of claims, while the defendant was the same.  On the 18th day of December, 1908, the learned justice handed down a decision, the opinion upon which so clearly and succinctly sets forth the issues involved for consideration that I present the same verbatim as follows:

[See 115 N. Y. Supp. 199, for opinion in Benvega v. United States Surety Co., here referred to.]

An examination of the statute in question, and particularly of the sixth section thereof, convinces me beyond possibility of argument to the contrary that the statute is unconstitutional by reason of its arbitrary discrimination in favor of steamship companies and their authorized agents, in violation of the constitutional guaranties to individuals of the equal protection of the laws, and to that extent I entirely agree with the opinion of that most learned justice.  The concluding sentence of his opinion, however, to wit, "the statute being unconstitutional and void, the bond furnished under it necessarily falls (Vose v. Cockcroft, 44 N. Y. 415)," raises a most interesting and

serious question of law, and my examination of the authorities upon the question involved compels me, however, with the greatest diffidence and respect, to disagree with his conclusion of law upon that important point. The plaintiff maintains, even though the act in question is unconstitutional, that the defendant is in no position to raise the question so as to test the constitutionality of the statute under which it gave the bond. He insists that the United Surety Company, the defendant, gave the bond in question voluntarily and without any coercion from the legislative authority; that the said surety company is not one of the parties or persons, firms, or corporations mentioned in the act required to give the bond, and cannot be considered as any party discriminated against or affected by the provisions of the act. It is well settled (and to this proposition of law counsel for the defendant agree, as evinced by a perusal of pages 14 and 15 of their elaborate brief), and it is now a firmly established principle of law, that no one can be allowed to attack a statute as unconstitutional who has no interest in it and who is not affected by its provisions (Red River Valley Nat. Bank v. Craig, 181 U. S. 548, 21 Sup. Ct. 703, 45 L. Ed. 994; Wiley v. Sinkler, 179 U. S. 58, 21 Sup. Ct. 17, 45 L. Ed. 84; United States v. Moriarty [C. C.] 106 Fed. 886; People v. Brooklyn, F. & C. I. R. R. Co., 89 N. Y. 75–93; 8 Cyc. 787; People ex rel. Henry v. Folks, 89 App. Div. 171–180, 85 N. Y. Supp. 1100); for the constitutional inhibition against the taking of private property without due process of law and all constitutional guaranties of equal rights and privileges are for the benefit of those persons only whose rights are affected and cannot be taken advantage of by any other person. (8 Cyc. 788; People v. Turner, 49 Hun, 466, 2 N. Y. Supp. 253). It has equally been established as a principle of law that a denial of equal rights and privileges by discriminatory legislation can be pleaded only by those who can show that they belong to the class discriminated against. It has been held in numerous cases, and the rule applies to all cases affecting civil rights of every kind and to all cases in which property rights are affected. 8 Cyc. 791; Kansas City v. Union Pacific R. R., 59 Kans. 427, 53 Pac. 468, 52 L. R. A. 321. In the case of Red River Nat. Bank v. Craig, 181 U. S. 548, 21 Sup. Ct. 703, 45 L. Ed. 994, Justice Peckham in affirming the principle above said (page 558 of 181 U. S., page 707 of 21 Sup. Ct. [45 L. Ed. 994]):

"One who does not belong to the class that might be injured by a statute cannot raise the question of its validity. Albany County Supervisors v. Stanley, 105 U. S. 305, 26 L. Ed. 1044; Clark v. Kansas City, 176 U. S. 114–118, 20 Sup. Ct. 284, 44 L. Ed. 392; Lampases v. Bell, 180 U. S. 276–283, 21 Sup. Ct. 368, 45 L. Ed. 527."

And in Cooley's Constitutional Limitations, p. 232, the subject is treated in the following language:

"Nor will a court listen to an objection made to the constitutionality of an act by a party whose rights it does not affect and who has therefore no interest in defeating it. * * * The statute is assumed to be valid until some one complains whose right it invades. Respect for the Legislature, therefore, concurs with well-established principles of law in the conclusion that such an act is not void, but voidable only, and it follows as a necessary

legal inference over this position that this ground of avoidance can be taken advantage of by those only who have a right to question the validity of the act and not by strangers. To this extent only is it necessary to go in order to secure and protect the rights of all persons against the unwarranted exercise of legislative power, and to this extent only, therefore, are courts of justice called upon to interpose."

A statute is assumed to be valid until some one complains whose rights it invades. Cooley on Const. Lim. 163, cited 89 N. Y. 93. "It is the duty of the court to determine a constitutional question only when it is directly and necessarily involved in the issue to be determined. It is only when some person attempts to resist the operation of an act claimed by him to be unconstitutional, and calls in the aid of the judicial power to pronounce it void as to him his property or his rights, that the objection of unconstitutionality can be presented and sustained." People, etc., v. Brooklyn, F. & C. I. R. R. Co., 89 N. Y. 76–93.

This now brings up the question, the important question, whether or not the defendant company is a person discriminated against, and whether it has the right to set up as a shield or defense to its solemn contract under seal the unconstitutionality of the statute under the provisions of which the defendant's principal was the one against whom the discrimination was directed. Section 2 of the act in question provided that:

"Said bond shall be executed by said corporation, firm or persons as principal, with at least two good and sufficient sureties, who shall be responsible and owners of real estate within the state of New York. The bond shall not be accepted unless approved by the Comptroller, and upon such approval it shall be filed in his office. The bond of a surety company may be received, if approved as aforesaid, or cash may be accepted in lieu of surety."

It will be observed that the principal had three ways in which to comply with the statute. He could furnish the security (1) by giving as sureties owners of real estate; or (2) he could deposit cash; or (3) he could give the bond of a surety company. There is nothing mandatory about the character of the surety, except that it should be sufficient and approved. A surety company was not named in the statute as a class whose bond alone would be accepted, and the surety company was under no legal or moral obligation to accept the risk except of its own free will, and it had the absolute right to refuse to execute the bond if it did not wish to do so; so that it is clear that, as to this particular defendant, its act was entirely voluntary, and not required by the statute, the language of which was that "the bond of a surety company may be received, if approved," and that provision was for the benefit of the defendant if it sought to avail itself of the opportunity presented for earning the premium on such a bond. The reasons for the enactment of the statute in question are manifest to those familiar with conditions existing in the large cities of our state; and were a statute enacted with the sixth provision of the act in question eliminated, thus avoiding the discrimination complained of, it would prove an exceedingly salutary enactment and of beneficent and immeasurable good. Thousands of poor immigrants whose all lie in the savings they desire to transmit by the companies

and agents affected by an act of the character now in question have found themselves after years of toil left naked by the knavery of those to whom they intrusted their hoard. Many of their dependent ones at home, living thousands of miles across the ocean, have waited and waited in vain for the remission of funds which would have brought cheer and comfort to them, only to learn that irresponsible and unscrupulous agents have taken the funds for transmission and absconded with the fruits of labor earned by the sweat of the brow. It was such a class of agents as this that the proposed enactment was sought to affect; and can this defendant now, after its principal has defaulted in paying the money delivered to him, and after having received the benefits from its principal in the shape of premiums for the bond, decline to bear the burdens·resultant from its voluntary act? The idea is repugnant to the sense of fair dealing, good faith, and honesty of business principles, and it is repugnant to justice as well.

Another question presents itself as to whether the defendant has not waived its right, assuming it has a right, to question the constitutionality of the statute. As counsel for the plaintiff aptly puts it:

"Conceding for the sake of argument that the defendant, United Surety Company, would have the right ordinarily to question the unconstitutionality of the act, it will be deemed to have waived any such right by voluntarily coming under its provisions and submitting to it by doing the very thing which the act directs to be done. The United Surety Company has executed a bond under the provisions of the act which it is now seeking to have declared unconstitutional. It has accepted the benefits, inasmuch as it has obtained remuneration for the giving of the bond on behalf of one of the persons directed by the act to procure the bond. It has entered into a contract by giving a bond. To allow the United Surety Company to escape from its contract (bond) would be to deny the very principles of contractual relationship. Can it be said that they may perceive an act unconstitutional, enter into the benefits of its provisions, and then when sued under their obligation be heard to say the Legislature had no power to pass the statute and it is unconstitutional?"

It is well settled that a person may by his acts or omission to act waive a right which he might otherwise have under the provisions of the Constitution. Pierce v. Somersett R. R. Co., 171 U. S. 641, 19 Sup. Ct. 64, 43 L. Ed. 316; Vose v. Cockcroft, 44 N. Y. 415. It has been held that a waiver of a constitutional provision precludes the party waiving it from afterwards claiming protection under it, even though it was adopted solely for his benefit, and such a waiver is binding as to both the past and future transactions. Lee v. Tillotson, 24 Wend. 337, 35 Am. Dec. 624; Baker v. Braman, 6 Hill, 47, 40 Am. Dec. 387; New York v. Manhattan R. Co., 143 N. Y. 1, 37 N. E. 494. And in the case of People v. Murray, 5 Hill, 468, the court held that where parties were authorized by statute to erect a dam across a river provided they should first execute a bond to the people, conditioned to pay such damages as each and every person might sustain in consequence of the erection of the dam, the damages to be assessed by a justice of the peace, and where the dam was erected and damages assessed as provided by the statute, it was held in an action on the bond to recover those damages that the party erecting the same and who had received the benefit of the statute was precluded by his action from contesting its validity and could not insist upon his right to a common-law

trial by jury, and that the defendants, having acted under the statute by building the dam, were not at liberty to question the constitutionality of the provision relating to the mode of assessing the damages. And the Court of Appeals upon the question of waiver has said:

"The question is whether by virtue of these various actions of defendant and its predecessors, together with, the acceptance of subsequent legislation on the subject, based upon the assumed validity of the act of 1868, there has not been a waiver of the defense that the act was unconstitutional. Persons or corporations even may waive in some matters, and upon some occasions, a constitutional or statutory provision in their favor. Embury v. Connor, 3 N. Y. 511, 53 Am. Dec. 325; Matter of Cooper, 93 N. Y. 507–512; Matter of New York, L. & W. R. R. Co., 98 N. Y. 447–453; Sentems v. Ladew, 140 N. Y. 463–466, 35 N. E. 650, 37 Am. St. Rep. 569. In the last cited case it is said: 'A party may waive a rule of law, or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right and no considerations of public policy or morals are involved, and, having once done so, he cannot subsequently invoke its protection.' Although the provision as to a local act containing but one subject, which shall be expressed in its title, is of a public nature, and was placed in the Constitution for the purpose of preventing surprises as to the object and purpose of any proposed legislation, yet when an act has been so passed, and its enactments bear upon the private rights of an individual, the constitutional provision then becomes as to him, one which is, within the meaning of the expression, enacted for his benefit, and it is then a matter which such individual may, as to his private rights, waive the benefit of, and consent to perform or submit to the requirements of the act, the same as if the constitutional provision had not been violated. And, when once such waiver has been made and such consent been given, the party so waiving and consenting is forever concluded thereby. Especially should this be so where the party takes benefits granted by the act." New York v. Manhattan R. Co., 143 N. Y. 26, 37 N. E. 494.

Where parties have accepted and received the benefits of acts unconstitutional or alleged to have been unconstitutional, the courts have held them éstopped to claim or set up the unconstitutionality of the act in question. The case of Mayor v. Gorman, 26 App. Div. 191, 49 N. Y. Supp. 1026, was an action brought against the defendant as the legal representative of a former sheriff of the county of New York to recover certain moneys alleged to be due the city of New York from the sheriff while he was acting in that capacity, and the defense interposed was that the statute under which he received the fees was unconstitutional. The court said:

"And now his executrix makes the extraordinary claim that the act under which her decedent administered his office, received his statutory salary, paid over the fees to the Comptroller, and received back one-half of them was unconstitutional, and that, as a legal consequence, she not only can retain the fees which were not turned into the city treasury, but can actually recover back from the city all those that were. Even if the act were invalid, neither the officer, nor his sureties, nor his or their representatives would under such circumstances be permitted to plead its invalidity. Having received the moneys in question under the act, the officer would be estopped from claiming its unconstitutionality in order that he might retain them. He certainly could not enjoy the benefits of the act and plead invalidity as to the duties. There is no case directly in point, doubtless because no public officer has ever ventured to make such a claim. But the rule laid down in Supervisor v. Allen, 99 N. Y. 532, 2 N. E. 459, points with sufficient emphasis to the governing principle. There it was said that a defendant who had received funds by virtue of an act which directed that they should be allowed to him for the benefit of his county could not set up the invalidity of the act under

which he received the money, and on that ground claim to retain it for himself as against the party for whose benefit he recovered it. This, as Judge Rapallo said, is 'fundamental.'" Mayor v. Gorman, 26 App. Div. 194, 49 N. Y. Supp. 1026.

As a supposititious case in point, suppose Ferrari, the defendant's principal for whom the defendant gave the bond, received the money from the plaintiff for transmission and failed to execute his contract, will any one contend for a single moment that he could in an action for money had and received brought by the plaintiff against him set up the unconstitutionality of the act as a defense? I think not, even though he were the party discriminated against by the unconstitutional act. And the reason is obvious that he received the money and benefits, and would be deemed to have waived the invalidity of the statute and would be estopped from setting it up as a defense. I have examined the cases submitted by defendant's counsel (Henry v. Daley, 17 Hun, 212; Gillespie v. Torrance, 25 N. Y. 306, 82 Am. Dec. 355; Putnam v. Schuyler, 4 Hun, 166; Lasher v. Williamson, 55 N. Y. 619), but I fail to see that they apply to the question at bar. They hold substantially that a surety cannot avail himself of an independent cause of action existing in favor of his principal against the plaintiff as a defense or counterclaim, and that it is for the principal to determine what use he will make thereof, and that the surety has no control over him in this respect, and they have no application to the case before me. Reverting to the case of Vose v. Cockcroft, supra, and relying upon which authority the learned justice of the Supreme Court decided the case before him, I have examined that case fully. That case held that the provisions of the Revised Statutes for a special proceeding in rem against ships by attachment to enforce a lien for supplies furnished for the use thereof are unconstitutional and void as conflicting with the exclusive admiralty jurisdiction of the federal court. In that case it was further held that:

"In civil procedure the protection of any statutory or constitutional provision may be waived, and a party may be estopped by his acts from denying the constitutionality of the law or proceeding. In an action upon a bond given to obtain the release of a vessel from attachment under the above provisions of the Revised Statutes, the defendant, having entered into stipulations which by fair inference recognized the validity of the statute, and having failed to allege its unconstitutionality by answer on the trial, must be deemed to have waived that defense. And the bond being given under the provisions of the statute to procure release of the vessel is given in invitum (that is to say, compulsory), and, the attachment being unconstitutional, the bond is also void."

The judgment for plaintiff in that case was affirmed by the Court of Appeals, upon the ground, however, that the answer did not set forth or allege the unconstitutionality of the act in question. In the case at bar it is true that the defense of unconstitutionality is fully set forth, but the distinguishing feature of the Vose Case, supra, and the one before me, is that in the Vose Case the bond was given by the defendant, a party interested and compelled by the law or act to do so, in order to procure the release of the vessel, while in this case the bond was given voluntarily by a surety company, who was not in any way interested in the statute either by its terms or provisions. I am of the opinion, therefore, that the defendant company, not being a person

discriminated against or affected by the statute, has no right to raise the question of its unconstitutionality, and I am also of the opinion that the defendant company, having voluntarily given the bond and accepted the benefits of the statute, has waived the right to question its constitutionality, and is estopped therefrom even if it had the right to assert its invalidity.

Therefore, after a careful examination of the law applicable to this case, I have arrived at the conclusion that the defenses set up in the answer are insufficient in law. I am of the opinion that the complaint herein sets forth a good cause of action against the defendant, and I therefore decide that the demurrer to the second paragraph of the answer and to the separate defenses therein should be, and is, sustained, with costs to abide the event and with leave to defendant to plead anew if it be so advised within six days after the entry of a decision and an interlocutory judgment hereon.

Ordered accordingly.